522 A.2d 667

In Re: Consolidation of Election Regions. West Branch Area School District, West Branch Area School District Board of Directors, Appellant.

Argued February 26, 1987, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*Winifred H. Jones-Wenger,* for appellant.

*Ann B. Wood,* with her, *Bruce George, Bell, Silber-blatt & Swoope,* for appellee, Concerned Citizens of Graham Township and Big Run Park Association.

OPINION BY JUDGE DOYLE, March 4, 1987:

This is an appeal from an order of the Court of Common Pleas of Clearfield County that denied a petition of the West Branch Area School District Board of Directors (Board) to divide the school district into three

regions in accordance with the Board's plan, Plan B-1, and granted a petition to divide the district into three regions in accordance with Plan B-2, the plan proposed by certain electors of the school district.

The instant litigation has its roots in an order of the Court of Common Pleas of Clearfield County dated March 4, 1985, by which order certain voting precincts in Clearfield County were altered and consolidated. Included among these precincts were those within the boundaries of the school district. Because of the consolidation, certain precincts became imcompatible in certain respects with the existing voting regions in the school district which encompassed five townships. This forced the Board to develop a plan to realign the election regions. The Board's authority to develop such a plan stems from Section 303 of the Public School Code of 1949, Act of March 10, 1949 (Code), P.L. 30, *as amended,* 24 P.S. §3-303. The school district is comprised of the townships of Cooper, Graham, Karthaus and Morris (all located in Clearfield County) and West Keating (located in Clinton County). The following chart sets forth the composition of the prior precincts by township as well as the new precincts.

| Township | Election Precincts Prior to 1986 | New Precincts (Former Precincts) |
|---|---|---|
| Morris Township | Munson Precinct Morrisdale Precinct | Morris # 1 (Allport/ Morrisdale) |
| | Ashcroft Precinct Allport Precinct | Morris # 2 (Ashcroft/Munson) |
| Graham Township | Centre Hill Precinct Graham Precinct | Graham (Centre Hill/ Graham) |
| Karthaus Township | Karthaus Precinct Cataract Precinct | Karthaus (Karthaus/ Cataract) |
| Cooper Township | Lanse Precinct Cooper Precinct | Cooper # 1 (Lanse/ Cooper) |
| | Kylertown Precinct Winburne Precinct | Cooper # 2 (Kylertown/Winburne) |

West Keating Township West Keating Township West Keating Township
(Clinton County)

Prior to 1985, there were three voting regions for the purposes of the selection of school board directors, with each region electing three directors. The composition of these regions was as reflected in the following chart:

Region # 1—
    Lanse Precinct (Cooper Township)
    Cooper Precinct (Cooper Township)
    Kylertown Precinct (Cooper Township)
    Winburne Precinct (Cooper Township)

Region # 2—
    Munson Precinct (Morris Township)
    Morrisdale Precinct (Morris Township)
    Ashcroft Precinct (Morris Township)

Region # 3—
    Allport Precinct (Morris Township)
    Centre Hill Precinct (Graham Township)
    Graham Precinct (Graham Township)
    Karthaus Precinct (Karthaus Township)
    Cataract Precinct (Karthaus Township)
    West Keating Township (Clinton County)

Because the consolidation combined the Morrisdale Precinct with the Allport Precinct, which were in separate regions before the consolidation, it was necessary to realign the precincts in order to re-determine the composition of each region.

The population data for each of the newly formed voting precincts is as follows:

| Precinct | Population |
| --- | --- |
| Cooper # 1 | 1,380 |
| Cooper # 2 | 1,319 |
| Morris # 1 | 1,817 |
| Morris # 2 | 1,222 |
| Graham | 1,225 |
| Karthaus | 649 |
| West Keating | 81 |

Pursuant to Section 303 of the Code either the Board or electors equal to at least twenty-five percent of the highest vote cast for any school director in the last municipal election may develop a plan to elect school directors either by regions alone or by a combination of regions and the school district at large. Any such plan proposed is required to be submitted to the court of common pleas for approval. The substantive requirements for any such plan are expressed in Section 303(b)(3) of the Code as follows:

> The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible and shall be compatible with the boundaries of election districts.

The Board devised a plan (Plan B-1) that proposed the realignment of the three election regions as follows:

| Region | Precincts | Population |
| --- | --- | --- |
| Region # 1 | Cooper # 1 Precinct | |
| | Cooper # 2 Precinct | 2,699 |
| Region # 2 | Graham Precinct | |
| | Morris # 2 Precinct | 2,447 |
| Region # 3 | Morris # 1 Precinct | |
| | Karthaus Precinct | |
| | West Keating Precinct | 2,547 |

This plan was presented to the court of common pleas which held an evidentiary hearing. At that hearing one Bruce George appeared and identified himself as spokesperson for the electors and presented another plan for the court's consideration (Plan B-2).[1] Plan B-2 is reflected in the following chart:

---

[1] The Board argues that the electors presented no evidence that they were in fact "resident electors" or that a sufficient number of electors were represented pursuant to the strictures of Section 303. We deem these issues to have been waived inasmuch as they were not raised before the trial court and hence are not properly preserved on appeal to this Court. *See* Pa. R.A.P. 302(a).

| Region | Precincts | Population |
|--------|-----------|-----------|
| Region # 1 | Cooper # 1 | |
| | Cooper # 2 | 2,699 |
| Region # 2 | Graham | |
| | Karthaus | |
| | West Keating | 1,955 |
| Region # 3 | Morris # 1 | |
| | Morris # 2 | 3,039 |

Mr. George on behalf of the electors argued that the Board's plan failed to consider the integrity of *municipal* boundaries, the expected change in population in the various regions, community characteristics, and the electors' preferences. In addition, he argued that if the Board's plan were adopted, two of the directors would not have to contend for the same directorship in an upcoming election and therefore that they had an interest in seeing that the Board's plan was the one selected.

The trial court, after considering both plans, found that the School Board had failed "to consider the integrity of the municipal sub-divisions" and hence denied the Board's petition and granted the petition of the electors. The Board appealed the adverse determination. On appeal here our function is to determine whether the selection of the electors' plan by the common pleas court was proper under the provisions of Section 303 of the Code.

As previously noted, pursuant to Section 303 there are two specific substantive requirements which must be present in any plan presented, *i.e.,* the population of each region shall be as nearly equal as possible and the boundaries shall be compatible with the boundaries of the *election* districts. There is no dispute here that neither plan violates the boundaries of the *election* districts. However, the electors argue that the Board in its proposed plan has violated *municipal* boundary lines. *See appendix.* We note first that there is absolutely nothing in Section 303 which indicates that municipal

boundary lines cannot be violated when establishing the relevant regions. We further note that neither under the Board's plan nor the elector's plan is the region which includes West Keating Township and Karthaus Township geographically contiguous with the other voting precinct (Morris # 1 in the Board's plan; Graham Township under the electors' plan). Had the legislature wished to dictate that municipal boundaries remain inviolate it could have so provided in the statute. It did not do so. Therefore, we disagree that the integrity of municipal boundaries is a relevant factor to be considered when assessing a particular plan.

Our resolution of this issue is in accordance with *Spring-Ford Area School District Division Case,* 210 Pa. Superior Ct. 338, 234 A.2d 184 (1967) wherein the Superior Court held that Section 303(b) sets up only two requirements. That restricted view of the statute was again followed by the Superior Court in *Chichester School District Division Case,* 210 Pa. Superior Ct. 426, 234 A.2d 187 (1967). The *Chichester* Court held that the trial court, in approving a particular plan under Section 303, had acted improperly in taking into consideration other factors including, *inter alia,* topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and the capability of providing a comprehensive program of education.

Having determined that the Board's plan cannot be discounted on the basis that it violated municipal boundary lines, we shall now consider and compare the two plans with respect to the population distribution requirement of Section 303. We begin by recognizing that Section 303(b)(3) clearly requires that "the population of each region shall be as nearly equal as possible. . . ." Thus, while the statute recognizes that absolute equality in population for the various regions is not likely to

be possible, the greatest equality possible is required. We recognized this requirement in *Resident Electors Appeal,* 71 Pa. Commonwealth Ct. 603, 456 A.2d 226 (1983) wherein we held that a disparity of four-to-one in a three-region district was impermissible. We so held because it was clear that had a different plan been adopted, a more equitable population deviation might have resulted. In contrast, in *Chichester* the Superior Court held that a disparity of two-to-one between the largest and smallest regions in a nine-region district was acceptable under Section 303(b)(3) of the Code. *Chichester* and *Resident Electors* do not stand for the proposition that a particular population ratio is or is not acceptable under the statute as a matter of law. Rather, it is clear that the acceptability of particular ratios or population deviations will turn upon the facts of each individual case. In *Chichester,* a two-to-one ratio was acceptable because there was no evidence that any better choice existed. However, in *Resident Electors* it was clear from the record that a different plan would allow for a more equitable population distribution. In the instant case, under the Board's plan the maximum population disparity would be only 252. Under the electors' plan, the maximum population disparity would be 1,084. The population deviations apparent for each plan are reflected in the following chart:

### Plan B-1 (Board's Plan)

|  | Population Deviation | % Population Deviation |
|---|---|---|
| Region # 1 | 134.7 | 5+% |
| Region # 2 | 117.3 | 4+% |
| Region # 3 | 17.3 | 0% |

### Plan B-2 (Electors' Plan)

|  | Population Deviation | % Population Deviation |
|---|---|---|
| Region # 1 | 134.7 | 5+% |
| Region # 2 | 609.3 | 23+% |
| Region # 3 | 474.7 | 18+% |

Reference to the above chart clearly indicates that under the Board's plan the *greatest* deviation is five percent, whereas under the electors' plan, that is the *smallest* deviation. In addition, the electors' plan has a huge twenty-three percent deviation factor. Inasmuch as Section 303 requires that each region shall be as nearly as possible equal in population, we are compelled to conclude that the Board's plan, which violated no election boundaries and distributed the population far more equally than the electors' plan, is the one that should have been adopted. Accordingly, we are constrained to reverse the order of the trial court.

## ORDER

AND NOW, March 4, 1987, the order of the Court of Common Pleas of Clearfield County in the above captioned matter adopting the electors' plan Plan B-2, is hereby reversed. This case is remanded to the trial court with directions that it immediately enter an order adopting the Board's Plan, Plan B-1. The trial court may use its equity powers to extend the deadline for filing nominating petitions should such action be necessary and in the best interests of justice. *See Barbieri v. Shapp,* 474 Pa. 613, 379 A.2d 534 (1977) (opinion reported at 476 Pa. 513, 383 A.2d 218 (1978)). *See also* 42 Pa. C. S. §706 (permitting this Court as an appellate court to remand a matter and require such further proceedings as may be just under the circumstances). Jurisdiction relinquished.

WEST BRANCH AREA
SCHOOL DISTRICT

WEST KEATING
TOWNSHIP

KARTHAUS TOWNSHIP

GRAHAM TOWNSHIP

COOPER
TOWNSHIP

#2

#1

MORRIS
TOWNSHIP

#1

#2

Appendix