**In re Petition of Central Bucks School District**

C.P. of Bucks County, no. 94-7705-18-6.

*Thomas F.J. MacAniff,* for School District.
*George M. Bush,* solicitor for New Britain Township & Buckingham Township.

RUFE, J., *J.,* January 25, 1995—We have before us for consideration the petition of the Central Bucks School District for approval of its plan for redistricting. A hearing was held in open court on December 19, 1994. At that time, the plan of the district was submitted for approval.

Objections to the district plan came from four sources. Two citizen taxpayers presented their own plans, each suggesting a more equal population distribution among the nine regions comprising the school district. Those

alternative plans were submitted by (1) Charles C. Wiberley of 91 Westaway Lane, Warrington; and (2) Cinda Haas, 1054 Regan Court, Warrington. Because each of the two alternate submissions by the above named individuals was submitted in his and her name only, and not as the representative of electors equal to 25 percent of the highest vote cast for any school director in the last municipal election, the school district timely objected to the submission of those alternative redistricting plans.

The statute in question, 24 P.S. §3-303(b)(2) provides as follows:

"(2) Electors equal to at least 25 per centum of the highest vote cast for any school director in the last municipal election may develop a plan to elect school directors from regions or to elect some school directors from regions and some from the school district at large. Plans proposed by electors shall be subject to the same requirements as plans proposed by the board of school directors."

The only pertinent reference to the section in question which we have found is in *Petition of the Board of Directors of the Hazleton Area School District,* 107 Pa. Commw. 110, 527 A.2d 1091 (1987). Therein, the Commonwealth Court opined:

"We did not intend to suggest, however, that the association be foreclosed from submitting its own plan, provided it meets the statutory qualifications to do so as set forth in section 303(b)(2) of the School Code, 24 P.S. §3-303(b)(2). Our impression from the oral arguments in this case is that the district most vehemently opposes the submission of any other plan to the trial court. It would seem to us, however, that a presentation

of more than one plan to the trial court would not be detrimental to the public's interest." *Id.* at 116, 527 A.2d at 1094.

Although we doubted, at the time of the hearing, that the individuals were entitled, under the statute, to submit alternative redistricting plans, we declined to exclude the individuals from participating and informally granted them party status by allowing full participation.

Objection to the school district's redistricting plan was also voiced by two constituent municipalities, New Britain Township and Buckingham Township.

New Britain Township expressed two reasons for its opposition:

"(1) Prior to the new plan, the entire township had been in one district, and the expressed view of the board of supervisors of the township is that the township continue to have its own region within the school district for election of a school board member;

"(2) Two election districts of the township (west one and west two) vote at the same polling place; election day workers for two school board vacancies instead of one vacancy could cause additional congestion or confusion at the polling place."

Buckingham Township, through the testimony of its Township Manager, Beverly Curtin, opposed the school district's redistricting plan because the school district's plan was based on 1990 census figures, whereas the township believed the numbers did not adequately reflect rapid residential growth and development to the present time. Mrs. Curtin estimates current Buckingham Township population to be 13,542, an estimate based on the issuance

of new building permits since 1990, whereas the 1990 census reflected a township population of 9,364. The township therefore felt the numbers used by the school district should have been reworked. Notably, Buckingham Township did not submit its own plan, nor did it adopt New Britain Township's position of keeping the township intact, or assuring at least one township resident would be a school board member at all times. Nor was the township population estimate based on anything other than the issuance of building permits plus general observations about development.

Existing case law has noted three criteria which must be complied with when school districts seek to be redistricted pursuant to changes in population within the district: 1) that the population of each region shall be as nearly equal as possible; 2) that the boundaries be compatible with the boundaries of election districts; and 3) when the district crosses county lines, the region shall be composed of contiguous election districts. *Hazleton, supra* at 112, 527 A.2d at 1092.

We need not be concerned with the third criteria, since the entire school district lies within Bucks County. We do not believe that the legislature meant to require the districts to be perfectly equal in population. Hence, we scrutinize the school district's proposed plan to see if it substantially complies with the criteria mandated by the legislature. We find that it does. Taking the figures provided by the Bucks County Planning Commission from the United States 1990 census, the total population of the district is 73,005. While another census could have been conducted to establish the populations by voting district, for the entire school district, none has been per-

formed. We will not rely on figures obtained as the result of estimate, speculation, "general knowledge" or interpolation. Therefore, we believe there are no figures from which to work other than from the 1990 federal census.

From those census figures establishing a total population of 73,005, raw division into nine districts as mandated produces an average population per region of 8,112. The school district's nine regions range from a population high of 9,124 (1,012 above average) to a population low of 7,092 (1,020 below average). Thus the largest district is 12.47 percent above average, the smallest district is 12.57 percent below average, and the total deviation from largest to smallest is 25.04 percent from the average. In other cases, courts have held that a population deviation greater than 16 percent did not invalidate a school district reapportionment plan *(Hazleton, supra);* that a population variation from 1,625 in the smallest to 3,378 in the largest did not violate the principle of "one man-one vote." *Chichester School District Division Case,* 210 Pa. Super. 426, 234 A.2d 187 (1967); and that a division into *three* districts of 7,000, 6,100 and 7,261 (total variation of over 17 percent) satisfied constitutional principals. *Spring-Ford Area School District Division Case,* 210 Pa. Super. 338, 234 A.2d 184 (1967).

On the other hand, a disparity of almost four to one between the largest and the smallest of three districts was disapproved. *Matter of the Establishment of Representation of the Cameron County School Board by Nine Directors Elected at Large,* 71 Pa. Commw. 603, 456 A.2d 226 (1983); and where one region contained 180 percent of the number of another region, with a like-

lihood that the disparity would increase, the plan was rejected: *In re Division of Ringgold School District Into Three Regions,* 47 Wash. County Rep. 105 (1967).

In our research, we have not compared one person-one vote decisions other than as they relate to Pennsylvania school districts for the reason that we believe it is far more difficult for a relatively small election district, such as a school district, to obtain comparative equality among regions, than, for example, congressional districts to re-draw district lines. Thus, we believe that a greater deviation is permissible due to the difficulty of juxtaposing the boundaries for school districts. We believe, therefore, that the school district's proposed redistricting complies with Supreme Court and school law mandates for comparative equality among election districts.

One of the objectants, New Britain Township, argued in favor of maintaining the township intact as a region, even though such a region would dilute the voting power of each of its electors. However, preservation of municipal boundaries has been held not to be a relevant factor to be considered, *In re Consolidation of Election Regions,* 104 Pa. Commw. 328, 522 A.2d 667 (1987), and we therefore reject New Britain Township's objections.

Likewise, we are not satisfied with the quality of evidence presented by Buckingham Township in opposition to the school district's proposal in order to reject the school district plan at Buckingham Township's instance. Buckingham Township has not, incidentally, shown that it has grown any faster than any other municipality between 1990 and 1994. Nor has Buckingham Township documented its own growth other than by the issuance of

building permits for four years. We do not know, for example, whether there has been a corresponding exodus from other areas of Buckingham Township which balances the suggested influx. We must deal with documented, rather than speculative, population. *Spring-Ford Area School District, supra; In re Consolidation of Election Regions, supra.*

It is the responsibility of the school district to develop a plan of redistricting, and the school district has done so. The plan is acceptable under existing statute and case law. It substantially complies with one person-one vote mandates. Because we are satisfied with the compliance of the school district's plan with constitutional mandates, we will not disturb the school district plan of redistricting, and the same is approved. The fact that other plans as submitted suggest closer adherence to one person-one vote principles does not invalidate the school district's plan, absent indicia of arbitrariness or discrimination. We believe, moreover, that it would be violative of the statute, section 303(b)(2) and therefore inappropriate to consider plans submitted by individuals in their individual behalf.

Succinctly, we are satisfied that (1) the population of each region is as nearly equal as possible; and (2) the boundaries are compatible with the boundaries of election districts. Therefore, we enter the following

## ORDER

And now, January 25, 1995, the redistricting plan of the Central Bucks School District for election of school board representatives is approved.

ADDENDUM

ORDER

And now, January 25, 1995, upon consideration of the within petition and after hearing thereon, it is hereby ordered and decreed that the plan proposed by the petitioner for the redistricting of the electoral regions of Central Bucks School District is approved.

The prothonotary is directed to certify the following regional boundaries to the Bucks County Board of Elections:

| REGION | VOTING DISTRICTS |
|--------|------------------|
| 1 | New Britain Township West 1 |
|   | New Britain Township East |
|   | New Britain Borough |
|   | Doylestown Township 6 |
| 2 | Plumstead Township North |
|   | Plumstead Township East |
|   | Plumstead Township South |
|   | Upper Buckingham Township 2 |
| 3 | Upper Buckingham Township 1 |
|   | Middle Buckingham Township 1 |
|   | Middle Buckingham Township 2 |
|   | Lower Buckingham Township |
|   | Doylestown Township 3 |
| 4 | Warrington Township 3, 4 and 5 |
| 5 | New Britain Township West 2 |
|   | Chalfont Borough |
|   | New Britain Township South 1 |
|   | New Britain Township South 2 |
| 6 | Doylestown Township 1, 2, 4 and 5 |

62

7       Warrington Township 1, 2
Doylestown Township 7
8       All Wards of Doylestown Borough
9       Warwick Township 1, 2 and 3