Spring-Ford Area School District Division Case.

Argued June 12, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*H. Kenneth Butera*, with him *Huganir, Butera, Detwiler & Butera*, for appellants.

*Malcolm Campbell*, for appellee.

OPINION BY ERVIN, P. J., September 14, 1967:

This case arises under the School Reorganization Act of August 8, 1963, P. L. 564, 24 PS §2-290 et seq., and involves the construction of §303(b) thereof, 24 PS §3-303. That section reads as follows: "The interim operating committee or after the date of establishment the board of school directors of a newly established school district, may, if it so chooses, develop a plan to divide the school district into either three or nine regions. The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible and shall be compatible with the boundaries of election districts. Such plan for the division of the school district shall be submitted for approval to the court of quarter sessions. If approved by such court,

the clerk thereof shall certify the regional boundaries contained therein to the county board of elections. In the event of any division, redivision, alteration, change or consolidation of election districts which renders regional boundaries incompatible with the boundaries of election districts, a new plan shall be developed and submitted for court approval in like manner. Any proposed change in an approved plan, including abolition of regional representation, shall be submitted for approval to the court of quarter sessions by the board of school directors. Where a three region plan is approved, three school directors who reside in each region shall be elected or appointed as hereinafter provided by and from each region and at all times each region shall be represented by three directors elected or appointed as hereinafter provided from that region. Where a nine region plan is approved, one school director who resides in each region shall be elected or appointed as hereinafter provided by and from each region and at all times each region shall be represented by a director elected or appointed as hereinafter provided from that region."

The Spring-Ford School District encompasses the entire area of the Townships of Limerick and Upper Providence and the Borough of Royersford in Montgomery County and the Borough of Spring City in Chester County.

Pursuant to the provisions of §303(b), supra, the school board, on July 1, 1966, enacted a resolution in which it chose to divide the district into three regions. The description of these regions, together with their population as of 1965 (which was stipulated of record) is as follows:

| Region | Population |
|---|---|

Region 1 shall be comprised of and the
.boundary be co-terminus with the Town-

ship of Upper Providence, Montgomery County.                                          7,000

Region 2 shall be comprised of and the boundary be co-terminus with the Township of Limerick, Montgomery County.                  6,100

Region 3 shall be comprised of and the boundary be co-terminus with the Borough of Royersford, Montgomery County, and the Borough of Spring City, Chester County.                                        7,261

On July 13, 1966 the board of school directors presented a petition to the Court of Quarter Sessions of Montgomery County[1] requesting the court to approve the foregoing plan. The present appellants, who were residents of Limerick Township and Upper Providence Township, filed exceptions to the plan, contending that the plan was unlawful under the enabling legislation and in violation of their rights under the Constitution.

No testimony was taken by the court below but a stipulation of facts covering past, present and future population and past and present real estate market values was filed and approved.

After argument before the court in banc, the court below, on November 30, 1966, approved the plan submitted by the school board. This appeal followed.

In a long line of cases the United States Supreme Court has held that the apportionment of seats in the legislatures of many of the states was in conflict with the Federal Constitution as an impairment of the right to vote. See the cases cited in footnote 4 of *Butcher v. Bloom*, 420 Pa. 305, 216 A. 2d 457.

We are met at the outset by the question as to whether the principle of "one man, one vote" estab-

---

[1] The court of the county in which the largest part of the area affected was located: §303(c).

lished by these cases, is applicable to elective bodies lower than state legislatures. The appeal cites the case of *Sailors v. Board of Education*, 387 U.S. 105, 87 S. Ct. 1549, 18 L. ed. 21 650, decided May 22, 1967, for the proposition that such principle does not apply to school boards. We do not so read that case. In Michigan, as in Pennsylvania, local school boards are elected by the people. In Michigan, as in Pennsylvania, the members of the local school boards elect the members of a county Board. The question involved in the *Sailors* case was not whether the "one man, one vote" principle was applicable to elections for local school boards but whether it was applicable to the election or appointment of county boards. The Supreme Court assumed that the requirements of *Gray v. Sanders*, 372 U.S. 368, 83 S. Ct. 801, 9 L. ed. 2d 821, and *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362, 12 L. ed. 2d 506, had been met in the election of the local boards. What that case actually held was that the principle did not apply to the election of the county board, since the functions of the latter were essentially administrative rather than legislative.

However, even if we assume that the method of electing the members of local boards must comply in all respects with the constitutional mandate of the Supreme Court of the United States and the Supreme Court of Pennsylvania, we find nothing in the record of this case to indicate that the required principles have not been faithfully followed.

The Act of August 8, 1963 provides in §303(a) that school districts of the 2nd, 3rd and 4th class, which includes the Spring-Ford Area School District, shall have a school board of nine members elected at large in the new district except as otherwise provided in the Act.

The exception is contained in §303(b) of the Act of August 8, 1963, wherein it states: "The interim op-

erating committee or after the date of establishment the board of school directors of a newly established school district, may, if it so chooses, develop a plan to divide the school district into either three or nine regions. The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible and shall be compatible with the boundaries of election districts."

Thus, the act sets up two, and *only* two, requirements, i.e.:

1. The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible, and

2. Shall be compatible with the boundaries of election districts.

It is necessary that *both* requirements be fulfilled.

In the present case it is clear that the regions are compatible with the boundaries of the election districts. However, the appellants contend that the plan, as presented by the board and approved by the court, is defective in that it fails to take into consideration the population trend of the district, which indicates that the population of the two boroughs will remain almost static, while the population of the two townships will grow by leaps and bounds. They argue that the word "population" in the act should not be limited to present population but should be considered to cover potential population changes.

We cannot agree. The present population is an existing fact and is a fixed standard against which the proposed plan can be tested. If some estimated figure for the future should be used, 1975, 1985 or some date beyond, there would be only conjecture and nothing which could be used as a reliable measuring rod.

We agree with the court below when it said: "Even if the population forecasters are correct in their figures

for the next ten or twenty years, the legislature foresaw possible population shifts within the regions when it provided for change in plan in Section 303(b), as follows:

" 'Any proposed change in an approved plan, including abolition of regional representation, shall be submitted for approval to the court of quarter sessions by the board of school directors.' "

It follows that the plan approved by the court below met both of the requirements set up by the School Reorganization Act and also the requirements of the Federal Constitution as interpreted by the Supreme Court.

Decree affirmed.