572 A.2d 1303

**RESIDENT ELECTORS OF the PENNSBURY SCHOOL BOARD, Appellants,**

v.

**PENNSBURY SCHOOL BOARD, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1990.

Decided March 26, 1990.

Todd C. Park, New Brighton, with him, A. Martin Herring, Philadelphia, for appellants.

Jeffrey T. Tucker, Curtin and Heefner, Morrisville, for appellee.

Before CRAIG and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Resident Electors of the Pennsbury School District (Appellants) brought an action in the Court of Common Pleas

of Bucks County to compel reapportionment of the Penns-bury School District (School District). The parties selected the Pennsylvania Economy League (PEL) as a special master to submit proposals for reapportioning the three districts and ultimately chose PEL's second alternative proposal (PEL II) as the reapportionment plan. PEL II was approved by the trial court to correct the population imbalance in the School District. The only issue upon which the parties could not agree was how PEL II was to be implemented. Appellants have appealed from the trial court's order adopting a phased-in implementation plan which will be more fully discussed below.

The facts are not disputed and may be briefly summarized as follows. Since the adoption in 1967 of a three-region voting plan in the School District, from each of which three school board directors are elected, substantial population shifts have caused significant population imbalances between the three regions. Appellants filed suit to correct this imbalance on the basis of Section 303 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 3–303, which requires "the population of each region [to be] as nearly equal as possible...." The Board of School Directors of the School District was granted permission to intervene.

Under the terms of the PEL II reapportionment plan the parties agreed to adopt, each region would have a population of approximately 22,000 people, to be accomplished in the following manner: region I would lose 6,000 voters to region III; region II would gain 9,000 voters from region III; and region III would gain 6,000 from region I and lose 9,000 to region II. Under the new plan, three of the nine incumbent school directors no longer resided in the districts from which they were elected.

The last general election for school board members was held November 7, 1989. The four successful candidates were elected to four-year terms. Although the parties to this action had agreed to the PEL II redistricting plan several months prior to this election, they could not agree

on a plan of implementation and the general election was conducted using the old voting regions. The day after this election, the trial court held a final hearing to determine how the reapportionment plan should be implemented. The court concluded that the plan should be phased in and ordered that three seats were to be filled during the 1990 municipal elections using the new districts. These three seats were held by Murray M. Cohen, deceased, and Hoyt J. Phillips and Kathleen K. Chiovitt, who no longer lived in the regions from which they had been elected. The court allowed the remaining board members to retain their seats until they were up for re-election, at which time the new voting districts would be used.

On appeal from that order, Appellants argue that the order violates Section 303 of the School Code and the constitutional "one person, one vote" principle. They contend that the entire nine-member school board should be re-elected at the earliest possible time. We note at the outset that Appellants are *not* contending that PEL II itself is violative of either the statutory provision or constitutional principles. Rather, it is solely the court's implementation plan which is at issue.

In support of their first argument, Appellants focus upon the following emphasized language from Section 303(b)(3) of the School Code:

The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible and shall be compatible with the boundaries of election districts. Such plan for the division of the school district shall be submitted for approval to the court of common pleas. If approved by such court, the clerk thereof shall certify the regional boundaries contained therein to the county board of elections. In the event of any division, redivision, alteration, change or consolidation of election districts which renders regional boundaries incompatible with the boundaries of election districts, a new plan shall be developed and submitted for court approval in like manner. Any pro-

posed change in an approved plan, including abolition of regional representation, shall be submitted for approval to the court of common pleas by the board of school directors, or by a petition of the resident electors within the district. Where a region plan is approved, *school directors who reside in each region shall be elected by and from each region. At all times each region shall be represented by directors elected or appointed from that region.* Where a combination at large and region plan is approved, all regions shall have an equal number of school directors who reside in each region and who shall be elected or appointed by and from each region. All plans shall provide that three school directors shall be elected at each municipal election. In a combination at large and region plan, the number of regions shall be three. In a region plan not combining at large directors, the number of regions shall be three or nine.

(Emphasis added.) They argue that the six incumbents the court's plan would allow to remain in office would not be elected "from" each region, because the three new regions will contain a different pool of electors than that from which the incumbents were elected. Further, the section requires each region to be represented "at all times" by directors appointed or elected "from" each region.

The trial court reasoned that the reapportionment plan should be phased in in order to avoid the disruption of electing the entire nine-member board. However, it recognized the necessity of replacing the three incumbents who no longer resided within the district from which they were elected, and ordered a special election in 1990 to fill the remaining years of these three seats using the new voting regions. Accordingly, the plan itself would be implemented in the upcoming 1990 elections and will be used for all future elections.

Section 303(b)(3) of the School Code is silent as to how and when a redistricting plan should be implemented. In our view, the trial court's action may be seen as striking a balance between two competing provisions of Section 303,

subsections (a) and (b)(3). Subsection (a) provides for staggered elections of school board members. Four are elected at municipal elections in 1985 and every four years thereafter and five are elected at the next municipal election and every four years thereafter; all nine are elected to four-year terms. The court's plan insures that each district will be represented by three resident directors and leaves intact the statutory scheme for staggering the elections.[1]

In support of their second argument, Appellants cite a case from the Fifth Circuit, *Panior v. Iberville Parish School Board*, 498 F.2d 1232 (5th Cir.1974), for the proposition that a reapportionment plan must be implemented immediately to pass constitutional muster. In *Panior*, the

---

**1.** We are aware of the sentence in Section 303(b)(3) which states that "[a]ll plans shall provide that three school directors shall be elected at each municipal election." This sentence is in obvious conflict with the latter portion of Section 303(a), which provides:

> Beginning with the terms to be filled at the municipal election held in 1979 and each odd numbered year thereafter, the terms of school directors so elected shall be four (4) years, except that at the municipal election in 1983, five (5) school directors shall be elected for terms of four (4) years and one (1) for a term of two (2) years. At the municipal election in 1985 and every four (4) years thereafter, four (4) directors shall be elected for terms of four (4) years. At the municipal election in 1987 and every four (4) years thereafter, five (5) directors shall be elected for terms of four (4) years. The board shall select by lot, prior to the time for filing of nomination petitions, the vacancy that is to be filled for a two (2) year term in 1983.

This subsection was amended in 1982 (Act of December 17, 1982, P.L. 1378). The 1982 amendment was necessitated because, when Section 303(a) was amended in 1978 (Act of July 1, 1978, P.L. 575), school board members' six-year terms were reduced to four years. Under the prior version of the statute, as it was amended in 1963 (Act of August 8, 1963, P.L. 564), three school directors were elected at each municipal election to six-year terms. With the new four-year terms in effect following the 1978 amendment, the legislature belatedly recognized that it had to make adjustments because it would have six board members, three elected to six-year terms in 1977 and three elected to four-year terms in 1979, whose terms would expire in 1983. The 1982 amendment was obviously designed to correct this error, while maintaining staggered elections, albeit in a different form. The above-quoted sentence of Section 303(b)(3) was not deleted in 1982, as it probably should have been. To the extent that it is contrary to the provisions of Section 303(a), the latter would govern as it was enacted later in time and is more specific. *See* 1 Pa.C.S. §§ 1936, 1933.

Fifth Circuit was dealing with a reapportionment plan which was, itself, unconstitutional. One of the aspects of the unconstitutional plan the court found objectionable was the fact that the plan was designed to allow the incumbents elected from the nine old wards to remain in office following the first election under the new fifteen-district plan. Because of the entire restructuring of the school district, those nine seats would be held by people elected from wards which bore no relationship to the newly-created districts. The Fifth Circuit remanded to the district court (which had approved the fifteen-district plan) for further proceedings, including the earliest possible termination of the terms of the incumbents.

■ Under the facts of *Panior*, that result was not surprising. However, Appellants have not cited, and we have not found any cases from either the Supreme Court of the United States or the appellate courts of Pennsylvania which hold that immediate implementation of a reapportionment plan is constitutionally required. To the contrary, these courts have recognized that immediate implementation may be impractical. Accordingly, the United States Supreme Court has held that courts must rely upon equitable principles in fashioning remedies. For example, in *Reynolds v. Simms*, 377 U.S. 533, 585, 84 S.Ct. 1362, 1379, 12 L.Ed.2d 506 (1964), a case involving the reapportionment of the legislature of Alabama, the Court stated:

> [O]nce a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to

and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree. As stated by Mr. Justice Douglas, concurring in Baker v. Carr, 'any relief accorded can be fashioned in the light of well-known principles of equity.' (Footnote omitted.)

The facts of this case, of course, differ greatly from *Reynolds*, where elections were allowed to proceed under an unconstitutional plan in order to give the legislature itself the opportunity to adopt its own reapportionment scheme. Here, the trial court, exercising its discretion, determined that it would be unfair to the incumbents and chaotic to the board to require a special election of the entire board. Nonetheless, it ordered that the new regions would take effect for all future elections, including the special election it scheduled for 1990.

In opinions following *Reynolds*, the Pennsylvania Supreme Court has reiterated that trial courts must exercise their discretion in both the fashioning and timing of relief. In *Butcher v. Bloom*, 415 Pa. 438, 203 A.2d 556 (1964), the Court allowed an imminent election of the Pennsylvania state legislature to proceed despite the admitted invalidity of its apportionment scheme, reasoning that the legislature was entitled to an additional chance to establish a constitutional apportionment plan. In *Newbold v. Osser*, 425 Pa. 478, 230 A.2d 54 (1967), the Court held that a trial court had abused its discretion in enjoining an imminent election of Philadelphia's city council under a new plan, where the plan itself was not unconstitutional.

Our Court, in *Marston v. Kline*, 8 Pa.Commonwealth Ct. 143, 154, 301 A.2d 393, 399 (1973), a case involving the reapportionment plan for Pennsylvania's senatorial dis-

tricts, noted that "[i]t is the overall apportionment scheme which is of the essence, not interim technical imperfections during a transition period." We held in *Marston* that it was appropriate to hold a special election using the new apportionment plan to fill a deceased senator's seat. We noted that "staggered terms for a legislative body is a proper and constitutional approach to the establishment of that body." *Id.*, 8 Pa.Commonwealth Ct. at 154, 301 A.2d at 398 (footnote omitted).

Upon the facts of this case, where the trial court ordered the reapportionment plan to take effect beginning with a special election in 1990 to correct immediately apparent deficiencies, while maintaining staggered elections for the full body of the board, we are unable to conclude that the trial court has abused the discretion entrusted to it. Accordingly, we shall affirm that court's order.

### ORDER

AND NOW, this 26th day of March, 1990, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.