**In re PETITION TO REAPPORTION the School Director Regions of the Chichester School District.**

**Appeal of Joseph A. DiMARCO, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1996.
Decided Feb. 13, 1997.

Peter L. Frattarelli, Philadelphia, for appellant.

Stephen J. Polaha, Media, for appellee, Board of School Directors of Chichester School District.

Terry Elizabeth Silva, Philadelphia, for amici curiae, federal plaintiffs.

Before SMITH and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Joseph A. DiMarco and other citizens of the Chichester School District (collectively, DiMarco) appeal from the August 16, 1996 order of the Court of Common Pleas of Delaware County (trial court) granting the petition filed by the Board of School Directors (Board) of Chichester School District (School District) and denying DiMarco's petition. The Board's petition provided for reappor-

1. Section 303(b)(2) of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 3–303(b)(2), provides a method for electors to present reapportionment plans:

> Electors equal to at least twenty-five (25) per-centum of the highest vote count for any school director in the last municipal election may develop a plan to elect school directors from regions or to elect some school directors from regions and some from the school district at large. Plans proposed by electors shall be subject to the same requirements as plans proposed by the Board of School Directors.

2. Section 303 of the School Code provides in relevant part:

> (a) [I]n each school district of the second, third and fourth class, there shall be a board of nine (9) school directors, who, except as otherwise provided in this act, shall be elected at large for terms of six (6) years....
> (b)(1) [T]he board of school directors may develop a plan to elect school directors from regions or to elect school directors at large and some from regions....
> ....
> (b)(3) The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible and shall be compatible with the boundaries of election districts. Such plan for the division of the school districts shall be submitted for approval to the court of common pleas.... Where a region plan is approved, school directors who reside in each region shall be elected by and from each region. At all times each region shall be represented by directors elected or appointed from the region. Where a combination at large and region plan is approved, all regions shall have an equal number of school directors who reside in each region and who shall be elected or appointed by and from each region. At all times each region shall be represented by a director or directors elected or appointed from that region. All plans shall provide that three school directors shall be elected at each municipal election. In a combination at large and region plan, the number of regions shall be three. In

tionment of the existing nine regions from which the school board directors are elected, whereas DiMarco's petition provided for elimination of the nine regions in favor of at-large election of school board directors.[1]

Since 1967, school board directors in the School District have been elected through a nine region plan pursuant to section 303 of the School Code.[2] However the School District has undergone significant demographic population changes since institution of that plan;[3] as a result, on June 21, 1996, DiMarco

a region plan not combining at large directors, the number of regions shall be three or nine. 24 P.S. § 3–303.

3. As of January 24, 1967, the populations of the nine school director regions were as follows:

| REGION | MUNICIPALITIES | POPULATION |
| --- | --- | --- |
| # 1 | Lower Chichester–First Precinct | 2,031 |
| # 2 | Lower Chichester–Second Precinct | 2,429 |
| # 3 | Marcus Hook–First & Third Wards | 1,674 |
| # 4 | Marcus Hook–Second & Fourth Wards | 1,625 |
| # 5 | Trainer | 2,358 |
| # 6 | Upper Chichester–First & Second Wards | 3,378 |
| # 7 | Upper Chichester–Third Ward | 1,968 |
| # 8 | Upper Chichester–Fourth Ward | 2,062 |
| # 9 | Upper Chichester–Fifth Ward | 2,274 |

By the time of the 1990 Census Report, however, the demographic composition of the School District had changed:

| REGION | MUNICIPALITIES | POPULATION |
| --- | --- | --- |
| # 1 | Lower Chichester–First Precinct | 1,831 |
| # 2 | Lower Chichester–Second Precinct | 1,829 |
| # 3 | Marcus Hook–First & Third Wards | 1,229 |
| # 4 | Marcus Hook–Second & Fourth Wards | 1,317 |
| # 5 | Trainer | 2,271 |
| # 6 | Upper Chichester–First & Second Wards | 5,415 |
| # 7 | Upper Chichester–Third Ward | 3,216 |
| # 8 | Upper Chichester–Fourth Ward | 3,607 |
| # 9 | Upper Chichester–Fifth Ward | 2,766 |

Thus, as a result of the population shift, the largest region is now over four times as large as the smallest region.

filed the petition proposing at-large election of school board directors, believing that it would provide fairer representation.

On July 3, 1996, the Board filed its petition for the reapportionment of school director regions, seeking to consolidate two existing regions into one and also to split one large region into two smaller regions. In this way, nine regions would remain, but the total population would be more equally distributed between regions.[4]

Argument was held before the trial court on August 6, 1996, and, on August 16, 1996, the trial court concluded that the Board's reapportionment plan met the requirements of section 303 of the School Code. Accordingly, the trial court entered an order approving the Board's petition and denying DiMarco's petition for at-large election of school board directors.

## I.

■ On appeal,[5] DiMarco first argues that the Board's plan violates section 303(b)(3) of the School Code, which requires that the population of each region be "as nearly equal as possible," in two ways: (1) the ratio of the population of the largest region to that of the smallest region, at 1.97:1, is too great; and (2) the population deviation of 68% between those regions is too high.

The School Code provides three ways of electing school board directors: (1) regional elections; (2) at-large elections; or (3) a combination of regional and at-large elections. *See* 24 P.S. § 3–303(b)(3). Where a regional plan is presented, the School Code sets forth two requirements: (1) the regions shall be compatible with the boundaries of election districts; and (2) the boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible. *Spring–Ford Area School District Division Case*, 210 Pa. Superior Ct. 338, 234 A.2d 184 (1967). Both of these requirements must be satisfied.[6] *In re Chichester School District*, 210 Pa. Superior Ct. 426, 234 A.2d 187 (1969); *Cameron County School Board, Resident Electors Appeal*, 71 Pa.Cmwlth. 603, 456 A.2d 226 (1983); *see also Petition of Board of Directors of Hazleton School District*, 105 Pa.Cmwlth. 565, 524 A.2d 1083 (1987).

■ In support of his argument here that the regions are not as equal as possible, DiMarco compares the ratio and percentage presented here to ratios and percentages approved or disapproved in similar cases. However, we note that such a determination must turn on the particular facts of each situation, rather than on strict mathematical formulae. *Chichester*. Thus, ratios and percentages of other reapportionment plans are not dispositive here, and such mathematical comparisons cannot form the basis for our conclusion.

The Board maintains that, because its plan complies with section 303(b)(3) of the School Code, the trial court did not err in approving it. In support of its position, the Board relies upon *Chichester* and *Hazleton*, both of which recognized that, while section 303's requirement that the regions be compatible with election districts is mandatory, the population equality requirement in that section is

4. Under the Board's plan, the School District would be reapportioned in the following way:

| REGION | MUNICIPALITIES | POPULATION |
|---|---|---|
| # 1 | Lower Chichester–First Precinct | 1,831 |
| # 2 | Lower Chichester–Second Precinct | 1,829 |
| # 3 | Marcus Hook | 2,546 |
| # 4 | Trainer | 2,271 |
| # 5 | Upper Chichester–First Ward | 2,667 |
| # 6 | Upper Chichester–Second Ward | 2,748 |
| # 7 | Upper Chichester–Third Ward | 3,216 |
| # 8 | Upper Chichester–Fourth Ward | 3,607 |
| # 9 | Upper Chichester–Fifth Ward | 2,766 |

5. Our scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Hammer v. Nikol*, 659 A.2d 617 (Pa.Cmwlth.1995).

6. We note that neither party has argued that the regions proposed in the Board's plan are not compatible with the boundaries of the election districts; thus, our analysis is limited to the population equality requirement.

couched in the malleable language of "as nearly as possible." Based on this leniency, the Board asserts that, due to the difficulties involved in creating nine nearly equal regions posed by the skewed demographics of the district, its proposed regions are, in fact, as nearly equal as possible.[7]

We recognize that, due to demographic circumstances, it is not always possible to fully meet both requirements of section 303(b)(3) of the School Code. This issue was addressed in *Chichester,* where our superior court stated that:

> When it is impossible to maintain the boundaries of existing election districts and, at the same time, form regions nearly equal in population, something has to give.
>
> We feel that the act itself furnishes the answer. It provides that the regions "shall" be compatible with the boundaries of election districts but only that the population shall be as nearly equal "as possible."

*Id.* at 431, 234 A.2d at 190. The trial court here examined the populations of the current and proposed regions and acknowledged that the Board's plan would not distribute the population among the regions so that each region would be exactly equal; nonetheless, the trial court found that the Board's plan meets the requirements of section 303(b)(3), as interpreted in *Chichester.*

However, the trial court reached this finding by misinterpreting *Chichester* to stand for the proposition that a ratio of largest to smallest regions of 2:1 is acceptable. To the contrary, the court in *Chichester* did not hold that any particular ratio is *per se* acceptable; rather, the court found that the reapportion-

ment plan met the requirements of section 303(b)(3) because:

> [i]t was *just not possible* to establish nine regions which were compatible with the existing election districts and come any closer to equality in population. The court below found: "In our opinion this is as fair a division, population wise *as can be accomplished.*"

*Id.* at 432, 234 A.2d at 191. (Emphasis added.)

 Thus, contrary to the trial court's belief, the test set forth in *Chichester* is not merely to verify whether, as here, the ratio is no greater than 2:1. Rather, to determine whether a regional plan satisfies the requirements of section 303 of the School Code, the trial court must ascertain whether the plan in question creates the most equal regions possible under the circumstances.[8] There is no indication that the trial court here correctly applied this test to the Board's plan; thus, the trial court's finding that the Board's plan meets the requirements of section 303(b)(3) as interpreted by *Chichester* is unsupported by substantial evidence.

Accordingly, we vacate the trial court's order and remand this case to the trial court for consideration of whether the regions created by the Board's proposed plan will, in fact, apportion the population in such a manner that each region shall be as equal as possible.

## II.

DiMarco next argues that the trial court inappropriately considered factors other than electoral boundaries and population equality in reaching its decision to approve the

---

7. DiMarco argues that the Board's reliance on *Chichester* is unwarranted because, in that case, the reapportionment plan was approved only because there was no other plan before the trial court. However, DiMarco misinterprets *Chichester.* In fact, the reapportionment plan in *Chichester* was approved, not because it was the trial court's only choice, but rather, because it complied with the requirements of section 303 of the School Code by establishing regions consistent with electoral boundaries and with populations as nearly equal as possible under the circumstances.

8. In *Chichester,* the superior court quoted the following from *Butcher v. Bloom,* 415 Pa. 438, 466, 203 A.2d 556, 572 (1964):
 > ... *the proper judicial approach is to ascertain whether,* under the particular circumstances existing in the individual State whose legislative apportionment is at issue, *there has been a faithful adherence to a plan of population-based representation,* with such minor deviations only as may occur in recognizing certain factors that are free from any taint of arbitrariness or discrimination.

 *Id.* at 432, 234 A.2d at 191. (Citations omitted) (emphasis in original).

Board's plan.[9] Specifically, DiMarco points to that part of the trial court's opinion in which the court expressed concern over the possibility that, under an at-large representation system, smaller municipalities could lose all chance of representation on the Board. DiMarco notes that the trial court also expressed concern over the disruption to the current Board members' terms of office which would result from instituting DiMarco's at-large representation plan.

■ According to DiMarco, electoral boundaries and population equity are the *only* two issues which may be considered by a trial court when considering a proposed regional plan.[10] Thus, DiMarco asserts that the trial court could not consider municipal boundaries, the effect of the at-large plan on the rights of lesser-represented groups in the School District or which plan would be the least disruptive to the community and to the current members of the Board. We agree with DiMarco that, in analyzing whether the Board's plan met the requirements of section 303 of the School Code, the trial court could not properly consider factors other than electoral boundaries and population equity. *Spring–Ford.*[11] However, we disagree with DiMarco's contention that the trial court actually considered such extraneous factors in reaching its conclusion that the Board's plan meets the requirements of section 303.

■ Review of the trial court's opinion reveals that the trial court first addressed the issue of whether the Board's reapportionment plan met the two requirements of section 303(b)(3) of the School Code, i.e., did it respect electoral boundaries and were the populations of the regions as nearly equal as possible. *After* concluding that the Board's plan did, indeed, meet the requirements, the trial court then shifted the focus of its analysis to determining which of the two plans before it would best serve the School District. At this point, the trial court could properly examine other considerations.[12] Because the restrictions of section 303(b)(3) of the School Code are applicable only to the question of whether a regional plan violates the School Code, the trial court was not constrained by that section in making its determination regarding which of the two plans before it was the most appropriate.

Because the trial court, in concluding that the Board's plan does not violate the requirements of the School Code, considered no factors other than those set forth in section 303 of the School Code, and reserved other considerations until after section 303's requirements were satisfied, DiMarco's second argument must also fail.

### III.

■ Finally, DiMarco argues that the trial court erred by ordering the Board's reappor-

---

9. We recognize that, due to our resolution of DiMarco's first issue, we need not consider DiMarco's other issues. However, because it is possible that DiMarco's other arguments could be raised again if the trial court, on remand, were to approve the Board's reapportionment plan, in the interest of judicial economy, we will address these arguments here.

10. In support, DiMarco cites to *Chichester,* in which our superior court stated that "topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and the capability of providing a comprehensive program of education" were improperly considered by the trial court. *Id.* at 430–31, 234 A.2d at 190.

11. In *Spring–Ford,* the superior court stated that:

[Section 303] sets up two, and *only two* requirements, i.e.:
1. The boundaries of the regions shall be fixed and established in such manner that the

population of each region shall be as nearly equal as possible, and
2. Shall be compatible with the boundaries of election districts.
*Id.* at 343, 234 A.2d at 187. (Emphasis in original.) Thus, these are the only two factors to be considered when deciding if a plan for reapportionment satisfies section 303. *Spring–Ford; Chichester.*

12. The Board contends that, under *Chichester,* the trial court properly considered "the apprehensions of smaller communities in a school district with at-large elections," (Appellee's brief at 27), and cites the following passage from *Chichester* in support:

In an election at large or even an election in a three region plan, there is always a possibility, which is almost a probability, that a smaller region will be completely outvoted and end up with no representation at all. This can be minimized by a nine regional plan.
*Id.* at 433, 234 A.2d at 191. However, we note that this language is merely dicta.

tionment plan to be phased in over time. Under the trial court's order, reapportionment will not be complete until the November 1999 elections, and, according to DiMarco, this deferral violates the requirements of *Resident Electors of the Pennsbury School Board v. Pennsbury School Board,* 132 Pa. Cmwlth. 362, 572 A.2d 1303 (1990).

In *Pennsbury,* we affirmed a trial court's decision to order special elections in order to immediately correct severe deficiencies in the board of directors of a reapportioned school district. DiMarco argues that the current population disproportion among regions which necessitates the reapportionment here is so severe that it also requires immediate action. DiMarco's reliance on *Pennsbury* to support immediate implementation of the Board's reapportionment plan is misplaced, however.

We note that, in *Pennsbury,* the severe deficiency which required immediate attention was the fact that three of the incumbent directors no longer resided in the districts from which they had been elected; thus, expedited special elections were necessary because those regions were unrepresented. Regarding the appellant's argument in *Pennsbury* that *the reapportionment plan itself* should also be immediately implemented, we stated:

> Appellants have not cited, and we have not found[,] any cases from either the Supreme Court of the United States or the appellate courts of Pennsylvania which hold that immediate implementation of a reapportionment plan is constitutionally required. To the contrary, these courts have recognized that *immediate imple-*

*mentation may be impractical.* Accordingly, the United States Supreme Court has held that courts must rely upon equitable principles in fashioning remedies.

*Id.* 572 A.2d at 1306. (Emphasis added.) Thus, in *Pennsbury,* we examined the trial court's reasoning and concluded that the trial court properly exercised its discretion by allowing the reapportionment plan to be implemented in such a way so as to maintain the staggered election schedule and minimize disruption to the school district.

Similarly, the trial court here fashioned a remedy in which the reapportionment plan would be phased in, allowing current Board members to serve out the remainder of their terms, minimizing the disruption to the School District, and preserving the rotation of directors mandated by section 303(a) of the School Code.[13]

Because we cannot say that the trial court abused its discretion or committed an error of law by ordering the reapportionment plan to be phased in, rather than immediately implemented, DiMarco's final argument must fail.[14]

Accordingly, we vacate and remand this case for further consideration consistent with this opinion.

## ORDER

AND NOW, this 13th day of February, 1997, the order of the Court of Common Pleas of Delaware County is vacated. We remand to allow the trial court fourteen days to properly apply *In re Chichester School District,* 210 Pa. Superior Ct. 426, 234 A.2d 187 (1967), to the question of whether the reapportionment plan presented by the Board of School Directors of the Chichester School District meets the requirements of section 303(b)(3) of the Public School Code of

---

13. Four members of the reapportioned Board will be selected in 1997 and five members of the reapportioned Board will be selected in 1999, at which time the reapportionment will be complete.

14. In his brief to this court, DiMarco attempts, in a footnote, to incorporate by reference arguments raised only by the amicus curiae in this case. However, because DiMarco did not raise

these issues in the Statement of Questions Involved in DiMarco's brief and did not argue them in his brief, he has waived them. Pa. R.A.P. 2111; Pa. R.A.P. 2116; *Borough of Riegelsville v. Miller,* 162 Pa.Cmwlth. 654, 639 A.2d 1258 , *appeal denied,* 538 Pa. 675, 649 A.2d 676 (1994); *Park v. Chronister,* 151 Pa.Cmwlth. 562, 617 A.2d 863 (1992), *appeal denied,* 534 Pa. 654, 627 A.2d 731 (1993).

1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 3–303(b)(3). If such a finding is made, then the trial court should forthwith determine a plan that would best serve the school district.

Jurisdiction relinquished.