**In re PETITION TO CHANGE the REPRESENTATION PLAN OF the OCTORARA AREA SCHOOL DISTRICT.**

**Gerald Mundy, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1998.
Decided Jan. 5, 1999.

Mary Rogers Auchincloss, West Chester, for appellant.

Alan J. Jarvis, Coatesville, for appellee.

Before SMITH, J., KELLEY, J., and McCLOSKEY, Senior Judge.

SMITH, Judge.

Gerald Mundy appeals from an order of the Court of Common Pleas of Chester County (trial court) that adopted a plan for election of the Board of School Directors (School Board) of the Octorara Area School District (School District) providing for election of three directors from each of three regions within the School District. Mundy questions whether the trial court erred in selecting the three-region plan and rejecting at-large representation; in considering factors that are not permissible under Section 303 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §3–303; and in permitting the School District to submit a plan after the date the court set for such submissions and without an opportunity for electors to challenge its suitability. He questions also whether the School District's plan violates the equality of population requirement of the School Code

or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

I

In February 1997 Mundy, a resident elector, presented to the trial court a petition, supported by a large number of co-signatories, to alter the method of representation with the School District. The petition provided information from the most recent census for the nine regions from which the members of the School Board were elected.[1] It asserted that permitting the 825 citizens of Atglen Township to elect one School Board director while the 2,712 citizens of Sadsbury Township in Lancaster County elected only one director constituted a violation of Section 303(b)(3) of the School Code, 24 P.S. §3–303(b)(3). That Section provides in part: "The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as possible and shall be compatible with the boundaries of election districts." The petition also asserted violation of the principle under the United States Constitution of "one person, one vote." It requested that the trial court abolish the current plan and order that it be replaced with election at-large.

The trial court ultimately ordered that hearings be held to receive public input and that any alternative plans be submitted no later than 14 days before the date scheduled for argument on Mundy's petition. By Mundy's characterization, 89 witnesses preferred either the nine-region board advocated by the School District or at-large election, and only three mentioned a three-region plan as a compromise. Four days before the argument, the School District filed an answer to Mundy's petition, which included a petition requesting that, should the nine-region plan be invalidated, the trial court order a plan for

1. The census figures for the existing regions, which are located in Chester County except as indicated, are as follows:

| | |
|---|---|
| Parkesburg Borough, North precinct | 1,128 |
| Parkesburg Borough, South precinct | 1,853 |
| West Sadsbury Township | 2,160 |
| West Fallowfield Township | 2,342 |
| Highland Township | 1,199 |
| Londonderry Township | 1,243 |
| Atglen Township | 825 |
| Borough of Christiana, Lancaster County | 1,045 |
| Township of Sadsbury, Lancaster County | 2,712. |

three regions.[2] At the argument the School District conceded the invalidity of the current plan.

■ The trial court issued a memorandum opinion referring to the statutory and case law requirements regarding electoral boundaries and population equity for regional plans but noting that the regions need not be exactly equal: the goal is to keep the regions as nearly equal as possible. *In re Consolidation of Election Regions*, 104 Pa.Cmwlth. 328, 522 A.2d 667 (1987). The trial court stated that given a choice between a totally at-large election or the plan advocated by the School Board for three regions, with populations of approximately 35 percent, 33 percent and 32 percent of the total population, the court thought that the latter was the better path. The court acknowledged that at-large representation results in complete equalization of the weight of all electors' votes, but it noted also that under such a method 100 percent of the School Board could be elected by 51 percent of the voters, with all nine members possibly coming from a single district or neighborhood. Such a plan, the trial court stated, would have the lurking potential for overriding the votes of various forms of minority groups. The court approved the School District's plan as better fitting the concept of representative democracy. This Court's review is limited to determining whether the trial court abused its discretion or committed an error of law or whether its decision is supported by substantial evidence. *Hammer v. Nikol*, 659 A.2d 617 (Pa.Cmwlth. 1995).

## II

■ The Court turns first to Mundy's procedural challenge in Part C. of his argument because his success on that point could moot the substantive issues raised here. Mundy argues that the trial court erred by considering the plan submitted by the School District much later than the deadline set by the trial court for such submissions and without providing an opportunity for factual challenges. The School District asserts that there is nothing on the record evidencing any timely objection by Mundy to the School District's proposal, although Mundy avers that he did object in the argument before the trial court several days later, which was not transcribed. Because a trial court has the inherent authority to regulate the practice before it, *Appeal of Borough of Churchill*, 525 Pa. 80, 575 A.2d 550 (1990), this Court concludes that the trial court had discretion to consider the plan submitted after a deadline set solely by the court. The sufficiency of the trial court's consideration of the plan shall be addressed below.

■ Asserting that the trial court erred in adopting the regional plan over the at-large plan, Mundy first quotes from Section 303(a) of the School Code, 24 P.S. §3–303(a): "[I]n each school district of the second, third and fourth class, there shall be a board of nine (9) school directors, who, except as otherwise provided in this act, shall be elected at large for terms of six (6) years." He characterizes this as the School Code's "emphasis" on at-large election and states that the best way to achieve equality of population and to be consistent with election districts is through at-large representation. However, the Court agrees with the School District that Section 303, by specifically providing for alternative methods of representation, does not express a preference for at-large elections.

Mundy refers to *Matter of Cameron County School Board*, 71 Pa.Cmwlth. 603, 456 A.2d 226 (1983). There resident electors appealed from the dismissal of their challenge claiming that a three-region plan violated Section 303 of the School Code, where the largest region was four times as populous as

2. Proposed Region I consisted of West Sadsbury Township, Parkesburg North and Parkesburg South; Region II consisted of Highland Township, Londonderry Township and West Fallowfield Township; and Region III consisted of Sadsbury Township, Christiana Borough and Atglen Township. Certified Record, Item No. 5. Section 303(a) of the School Code, 24 P.S. §3–303(a), provides in part that in school districts of

the second, third and fourth classes, there shall be a school board of nine school directors, and Section 303(b)(3) provides that in a regional plan not combining at-large directors, the number of regions shall be three or nine. Therefore, the School District's petition implicitly requested creation of three regions with three directors to be elected from each region.

the smallest. They petitioned for a change to fully at-large election for school directors. This Court agreed that the existing plan so egregiously violated the population equity requirement that the stated rationale of preserving election districts could not justify it. The Court noted that both concerns expressed in Section 303(b)(3) could be satisfied by a combined regional and at-large election plan and that the petitioners indicated at argument that such a plan would be an acceptable alternative to them. The Court remanded for the school district or the resident electors to present an acceptable representation plan.

Mundy contends that *Cameron County School Board* indicates that the at-large plan was to be preferred over the regional plan because the plan that better accommodates equality of population must be selected. The Court agrees with the School District, however, that *Cameron County School Board* does not require selection of at-large representation whenever such a plan is among those proposed. Had that been the case, this Court would simply have directed the granting of the resident electors' original petition as a matter of law. Instead, the Court remanded for submission of a different plan.

Mundy refers to cases that he contends show a preference for at-large election; he asserts that regional election has been preferred only where there exists the danger of dilution of the voting strength of a racial minority, citing *Hoots v. Commonwealth*, 672 F.2d 1124 (3d Cir.1982) (federal constitutional principle of "one person, one vote" applies to school board elections). Concerning the effect of at-large representation, he refers to the district court's statement in *Pitts v. Kunsman*, 251 F.Supp. 962 (E.D.Pa.), *modified*, 363 F.2d 841 (3d Cir.1966), that where at-large representation is contemplated for a consolidated school district, all of the representatives may come from one of the former school districts for constitutional purposes. "It is only when the representatives are elected from individual districts that the constitutional mandate of 'one man-one vote' comes into operation." *Id.* at 964. The Court notes that *Pitts* does not state a preference for at-large over regional election;

rather, *Pitts* expresses the concept that the two methods may not usefully be compared.

Mundy notes in the final section of his brief that Region I's population of 5,141 is 6 percent higher than an average for the three regions, and Region III's 4,582 is 5 percent lower, for a combined deviation from the norm of 11 percent. Region II's population of 4,784 is 1 percent less than the average. He argues that election at-large, with its automatic equality of all votes, is preferable here, asserting that there is no reason shown in the record for regional representation in this relatively small school district. As Mundy notes in Part D. of his argument, this Court discussed the equality of population requirement of Section 303(b)(3) of the School Code in depth in *In re Petition to Reapportion School Director Regions of the Chichester School District*, 688 A.2d 1275 (Pa.Cmwlth.1997). The Court stated that a determination must turn on the particular facts of each situation and that ratios or percentages approved or disapproved in similar cases are not dispositive. This Court reaffirmed the principle that a trial court must ascertain whether the plan in question creates the most nearly equal regions possible under the circumstances. The School Distict's plan in the present case must be measured against this standard.

In *Chichester School Dist.* this Court vacated the trial court's order and remanded for consideration of whether the regions created by the school board's proposed plan would in fact apportion the population such that all regions were as nearly equal as possible. In the Court's view the same result must obtain here. Although information regarding the population of each of the districts making up the three regions was of record, Mundy is correct that the School District's late-submitted plan was not subject to the same sort of scrutiny and public examination as were the plans that were the subject of the public hearings. The trial court's finding that the School District's plan provided for the maximum population equity was in relation to a division based upon the previous nine regions that were derived from municipal boundaries. However, this Court held in *In re Consolidation of Election Regions*,

where a consolidation of election districts required the reorganization of school director election regions, that although Section 303(b)(3) requires that regional boundaries be compatible with existing "election districts," the legislature did not provide that municipal boundaries must be respected when establishing school director regions. The Court stated that municipal boundaries were not a relevant factor to be considered in assessing a particular plan.

■ Next, Mundy contends that the trial court erred in considering factors for reapportionment purposes that are not permissible under the School Code in choosing between competing plans. First, he refers to the court's expressed preference for regional over at-large election as better fitting the concept of representative democracy. He also infers that the court gave great weight to the regional plan because it was the preference of the School Board. Mundy argues that, because the three-region plan was proposed after the conclusion of the public hearings, there was no opportunity to explore the concerns expressed by the court concerning the possible overriding of the rights of minority groups, i.e., whether there were minority groups, however defined, that needed protection.

As Mundy notes, this Court considered the question of permissible factors under the School Code in *Chichester School Dist.* The Court agreed with the petitioner that, in analyzing whether the requirements of Section 303 had been met, "the trial court could not properly consider factors other than electoral boundaries and population equity." *Id.,* 688 A.2d at 1280 (citing *Spring–Ford Area School District,* 210 Pa.Super. 338, 234 A.2d 184 (1969)). The Court went on to hold, however, that *after* concluding that a particular plan met the requirements of the School Code, the trial court could and did properly examine other considerations in choosing between two proposals. In the present case, the trial court's consideration of population equity was not sufficient, and the court's giving determinative weight to other factors before population equity was properly established therefore did violate the School Code.

■ Finally, Mundy argues that the School District's plan violates the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court has established in *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and its progeny that the Constitution requires that districts for local elections be substantially equal in population. Only limited variances that are unavoidable despite a good faith effort to achieve equality or for which justification is shown are permissible. *Kirkpatrick v. Preisler,* 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969). Deviations from population equality must be justified by legitimate state considerations. *Abate v. Mundt,* 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971). In a reply brief Mundy cites *Voinovich v. Quilter,* 507 U.S. 146, 113 S.Ct. 1149, 122 L.Ed.2d 500 (1993), for the proposition that if the maximum deviation of a redistricting plan exceeds 10 percent, it is prima facie unconstitutional, and the larger disparities must be justified by the state.

In the present case, the Court need not decide the constitutionality of the School District's plan because the trial court's order adopting it will be vacated. Nevertheless, the Court notes that deviations of greater than 10 percent have been held to be acceptable where the state interest advanced as justification was strong and was free from any taint of arbitrariness or discrimination. *See Brown v. Thomson,* 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983) (deviation of 60 percent below the mean resulting from granting least populous county a representative in the state legislature was justified by state's interest in preserving its practice, followed since statehood, of granting each county at least one representative). On remand, the interest of following the mandate of Section 303(b)(3) of the School Code that school director regions follow "election districts" (but not necessarily municipal boundaries) will be a legitimate factor to consider if the trial court again approves a regional plan. The order of the trial court is vacated, and this case is remanded for the trial court to make a determination of whether the three-region plan submitted by the School District creates the most nearly equal regions possi-

ble, after providing an opportunity for public discussion and challenge in a hearing similar to that provided for the nine-region and at-large plans.

## ORDER

AND NOW, this 5th day of January, 1998, the order of the Court of Common Peas of Chester County is vacated, and this case is remanded to the trial court for a determination, following opportunity for hearing, of whether the three-region plan proposed by the Octorara Area School District meets the requirements of Section 303 of the Public School Code of 1949. Should the trial court conclude that it does not, the court may order adoption of the at-large plan for elections proposed by Gerald Mundy, or it may direct the submission and examination of alternative plans that may be acceptable under the School Code.

Jurisdiction relinquished.