Marston, et al. *v.* Kline, et al.

144

Argued February 23, 1973 at special session before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Louis W. Fryman,* with him *William Austin Meehan,* for plaintiffs.

*Israel Packel,* Attorney General, with him *Lawrence J. Beaser,* Deputy Attorney General, for defendants, Kline and Tucker.

*John M. McNally, Jr.,* First Deputy City Solicitor, with him *Martin Weinberg,* City Solicitor, for defendants, Patterson, Menna and Maier.

PER CURIAM OPINION, March 8, 1973:

This is an election case coming within the original jurisdiction of this Court in accordance with the pro-

visions of Article IV, Section 401(a)(1) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, as amended, 17 P.S. §211.401(a)(1). The case was commenced by the filing of a complaint on February 13, 1973, by David W. Marston, Carmen Quanti and Robert Becker, on behalf of themselves and on behalf of all other qualified electors of the Second Senatorial District of Pennsylvania similarly situated, as a class (plaintiffs).

The defendants are: (1) Ernest P. Kline, Lieutenant Governor of the Commonwealth, who is charged with the duty of issuing Writs of Election for the holding of special elections to fill vacancies which occur in either House of the General Assembly (See Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, art. VI, §628, as amended, 25 P.S. §2778); (2) C. Delores Tucker, the Secretary of the Commonwealth, who is charged with the duty of certifying to the County Boards of Elections the names of candidates for special elections (See 25 P.S. §2621); and (3) the three named members of the County Board of Elections of Philadelphia County, who are charged with the duty of carrying out all of the provisions of the Election Code for special elections within that county (See 25 P.S. §2642). All of these defendants will be referred to herein collectively as defendants.

None of the facts alleged in the complaint are in dispute.[1] The complaint sets forth the following pertinent facts:

1. The Honorable Benjamin R. Donolow was elected to the office of State Senator for the Second Senatorial District of the Commonwealth of Pennsylvania on November 3, 1970 to serve for a term of four years, expiring on November 30, 1974.

---

[1] One typographical error in the complaint, namely the date of Senator Donolow's death, was amended by stipulation to read November 27, 1972.

146

2. On November 27, 1972, Senator Donolow died, creating a vacancy in the office.

3. At the time of his election in 1970, Senator Donolow's Senatorial District consisted of the 8th, 15th, 24th, 29th, 30th, 36th and 48th wards of the City and County of Philadelphia (old Second Senatorial District). Senator Donolow's District was part of a reapportionment plan for the Pennsylvania General Assembly promulgated by the Pennsylvania Supreme Court on February 4, 1966. *See Butcher v. Bloom,* 420 Pa. 305, 216 A. 2d 457 (1966).

4. Under the provisions of Article II, Section 17 of the Pennsylvania Constitution of 1968, the Pennsylvania Legislative Reapportionment Commission, on December 29, 1971, filed its Final Reapportionment Plan for the Pennsylvania General Assembly. This final plan became law on June 5, 1972, when the Supreme Court of Pennsylvania denied various appeals challenging the constitutionality of the plan. *See Commonwealth ex rel. Specter v. Levin,* 448 Pa. 1, 293 A. 2d 15 (1972).

5. Under the Final Plan, the new Second Senatorial District consists of the following wards and parts of wards of the City and County of Philadelphia:

| | |
|---|---|
| Wards (complete) | 8, 15, 26, 29, 30, 36 and 48 |
| Wards | 24 (1st, 2nd, 3rd, 4th, 5th, 11th, 12th, 13th, 15th, 16th, 17th and 18th divisions only) |
| Ward | 32 (20th, 21st, 22nd, 23rd, 24th, 25th, 26th, 27th, 30th, 31st, 32nd and 33rd divisions only) |

6. As a result of the Final Plan and the resultant reapportionment, the following specific and pertinent changes effecting the Second Senatorial District should be noted:

(a) The 9th and 14th divisions of the 24th ward were assigned to the Seventh Senatorial District. The voters in these divisions elected Senator Freeman Hankins in the November 1972 General Election.

(b) The 6th, 7th, 8th and 10th divisions of the 24th ward were assigned to the Eighth Senatorial District. The electors in these divisions are represented by Senator Thomas P. McCreesh, who was elected in the November 1970 General Elections; therefore, the electors in these divisions were not given the opportunity to vote for Senator McCreesh in that election.

(c) The 1st through 19th, the 28th and 29th divisions of the 32nd ward were retained in the new Third Senatorial District and the voters from these divisions had the opportunity to vote in the November 1972 General Election for Senator Herbert Arlene.

(d) The remaining divisions of the 32nd ward were transferred to the new Second Senatorial District.

(e) The entire 26th ward was assigned to the new Second Senatorial District; and the voters of this ward were given the opportunity to vote in the November 1970 General Election, in which Senator McCreesh was elected.

7. State Senators of the Pennsylvania General Assembly are elected for four-year terms. (Pa. Const. Article II, Section 3) The Constitution of 1874 initially established the principle that Senators run for office in staggered two-year periods. The Act of January 9, 1964 (1963, Ex. Sess.) P. L. 1432, §4, 25 P.S. §2220, provided for the current staggered terms of State Senators. Under the facts of this case, Senators from even numbered districts were elected at the November 1970 General Election. Senators from odd numbered districts were elected at the regular General Election held in November of 1972.

8. The Lieutenant Governor, on January 3, 1973, issued a Writ of Election providing for a Special Elec-

tion to be held on March 13, 1973 for the purpose of filling the vacancy caused by the death of Senator Donolow. The said Writ of Election provided for the holding of the Special Election in the new Second Senatorial District as reconstituted under the Final Plan of the Commission.

While giving scant reference (mentioned only in a footnote in the complaint) to the electors of the 24th and 32nd wards,[2] the plaintiffs contend, as electors in the 8th, 15th and 48th wards, that their constitutional rights to equal protection, under the 14th Amendment of the United States Constitution and the Constitution of the Commonwealth of Pennsylvania, are being deprived by virtue of the fact that the electors of the 26th ward (who voted in the General Election of November 1970, in which Senator McCreesh was elected) will be permitted to vote again in the Special Election ordered for March 13, 1973 for a second Senator. The plaintiffs contend that this will result in double representation for the people of the 26th ward, and that their right to be represented by the new Senator will be "diluted" when compared with the rights of other electors. The Plaintiffs pray that this Court declare the Writ of Election for the Special Election null and void and that defendants be enjoined from holding the Special Election on March 13, 1973. They further pray that this Court issue an injunction ordering and compelling the defendants to issue a new Writ of Election, not for the old Second Senatorial District, but for another Senatorial District of their design.

Preliminary Objections were filed by all of the defendants in the nature of a demurrer and also in laches.

---

[2] The electors in these wards are mentioned only in a footnote in the complaint. The plaintiffs in their brief concede that the four divisions of the 24th ward assigned to the Eighth Senatorial District (Senator McCreesh) should be excluded from the Special Election, thereby effectuating the Final Plan of 1972.

Because of the urgency of the matter and because there is no dispute on the facts, both the plaintiffs and defendants request this Court to decide as a matter of law whether a special election, called to fill a vacancy for the remainder of the term of a deceased Senator, should be held (1) in the new Second Senatorial District as reconstituted after a proper reapportionment, or (2) in a hybird senatorial district described by the plaintiffs, or (3) even in the old Second Senatorial District from which the deceased Senator was elected, or (4) at all. To expedite the matter, the President Judge of this Court called the Court together en banc, on February 23, 1973, in a special session. An Order of Court dismissing the complaint was issued on February 27, 1973, and this Per Curiam Opinion follows.

In deciding this issue as a matter of law, we must first look to the Pennsylvania Constitution of 1968. It provides in Article II, Section 17(e), as follows: "When the Supreme Court has finally decided an appeal or when the last day for filing an appeal has passed with no appeal taken, the reapportionment plan shall have the force of law and the districts therein provided *shall be used thereafter in elections* to the General Assembly until the next reapportionment as required under this section seventeen." (Emphasis added.) Our reading of this section of the Pennsylvania Constitution makes it crystal clear to us, and we therefore conclude, that its strict interpretation is, under the facts of this case, that the special election to fill the vacancy brought about by the death of Senator Donolow must be held in the new Second Senatorial District, as set forth in the Final Plan of the Pennsylvania Legislative Reapportionment Commission which became law on June 5, 1972.

Plaintiffs argue that the word "elections" as found in the constitutional provision at Article II, Section 17(e) means only regular elections. We find no such

special meaning or definition for the word "elections" in that section. As an aid to this Court in determining what that word means, we refer to Section 102 of the Election Code, 25 P.S. §2602, where this word is defined, as follows: "The word 'election' shall mean any general, municipal, *special* or primary election, unless otherwise specified." (Emphasis added.) In interpreting the words of the Constitution, we are not bound by the definition given in a statute, but most certainly we are permitted to utilize the definition given to the particular term by the Legislature as an aid or guide in determining what a word in the Constitution means.

We believe it important to note that nowhere do the plaintiffs allege any arbitrary or capricious action on behalf of any of the defendants. Rather, the plaintiffs complain that their rights have been deprived by virtue of State action resulting from the State's compliance with the equal protection provisions of the United States Constitution, as pronounced and held by the United States Supreme Court in recent reapportionment cases. It is the State's compliance with the "one man, one vote" mandate combined with the staggered terms of State Senators which caused the problem about which the plaintiffs complain. It is probable that this same problem will exist every ten years after the census in one or more Senatorial Districts, a result of demographic changes. We believe it also important to note that when the General Election was held in November of 1972, for the odd numbered Senatorial Districts, neither these plaintiffs nor anyone else, to our knowledge, raised the issues now being proffered by the plaintiffs in this case.

During the 1964 term, the United States Supreme Court handed down a number of decisions involving apportionment in which the "one man, one vote" rule was established. The leading case, most often cited, is

*Reynolds v. Sims,* 377 U.S. 533 (1964).[3] In *Reynolds,* the Court stated: "[I]t is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement." 377 U.S. at 577. The Court quoted with approval Justice HOLMES' statement in *Bain Peanut Company of Texas v. Pinson,* 282 U.S. 499, 501 (1931), wherein he said: "We must remember that the machinery of government would not work if it were not allowed a little play in its joints." In *Reynolds,* the Court further pointed out that in a determination of whether there has been a violation of a citizen's right: "[T]he judicial focus must be concentrated upon ascertaining whether there has been any discrimination against certain of the State's citizens which constitutes an impermissible impairment of the constitutionally protected right to vote." 377 U.S. at 561. The *Reynolds* decision further provided: "Decennial reapportionment appears to be a rational approach to readjustment of legislative representation in order to take into account population shifts and growth. Reallocation of legislative seats every 10 years coincides with the prescribed practice in 41 of the States, often honored more in the breach than the observance, however." 377 U.S. at 583. Among the guide lines to be taken from *Reynolds* is the principle that equitable consideration should be taken into account. In this regard, the Court said: "However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court

---

[3] *WMCA, Inc. v. Lomenzo,* 377 U.S. 633 (1964), *Maryland Committee for Fair Representation v. Tawes,* 377 U.S. 656 (1964), *Davis v. Mann,* 377 U.S. 678 (1964), *Roman v. Sincock,* 377 U.S. 695 (1964), and *Lucas v. Forty-Fourth General Assembly of the State of Colorado,* 377 U.S. 713 (1964).

in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demand on a State in adjusting to the requirements of the court's decree." 377 U.S. at 585.

It is interesting to note that there are no allegations in the plaintiffs' complaint concerning demographic or population statistics. Although the plaintiffs are alleging a violation of the principle of "one man, one vote", the plaintiffs make no allegations on how their vote is diluted statistically under the newly reapportioned Second Senatorial District.

The plaintiffs cite the case of *McLaughlin v. Osser,* which involves an unreported opinion of the Court of Common Pleas of Philadelphia County at No. 07281 June Term, 1965, which was affirmed per curiam without opinion by our Supreme Court at 419 Pa. 609, 213. A. 2d 375 (1965) in support of their contentions in this case. Our careful review of this opinion of the lower court leads us to conclude quite to the contrary, that the case supports the position of the defendants in this case. Although the court there questioned is jurisdiction to decide the case, and noted that it was faced with a new reapportionment which had been declared unconstitutional by the Supreme Court in *Butcher v. Bloom,* 415 Pa. 438, 203 A. 2d 556 (1964), the lower court in *McLaughlin* held that in the interest of expediency, and to meet an urgent situation so as to permit representa-

tion of electors in the deceased Senator Silvert's Senatorial District in the City of Philadelphia, it, in effect, permitted a special election to be held in the new reapportioned district. It should further be pointed out that the *McLaughlin* case was decided prior to the adoption of the 1968 amendments to the Pennsylvania Constitution. In any event, the result in the *McLaughlin* case is contrary to the position of the plaintiffs in this case.

The plaintiffs argue that if the special election to be held on March 13, 1973 is permitted, under the new Second Senatorial District, that somehow their vote will be "diluted." We fail to comprehend the plaintiffs' connotation of the word dilution. As we read the cases, dilution may result where the electors' vote arithmetically is less significant, and their representative is less effective in the Legislature because other representatives, elected by fewer people, have the same voting power in the legislative body. *See Baker v. Carr,* 369 U.S. 186 (1962) and *Reynolds v. Sims, supra.* In this case, the plaintiffs have not made any allegation whatsoever showing the statistics upon which they contend that their votes are diluted.

Plaintiffs contend that by virtue of the adding of ward 26 to the new Second Senatorial District there will be double representation for some of the electors of the new district. We conclude that plaintiffs' position cannot be upheld. We hold that as a matter of law when the Final Plan of the Pennsylvania Reapportionment Commission was upheld by the Pennsylvania Supreme Court (on June 5, 1972) that the newly created, reconstituted, or reapportioned Senatorial Districts became the constitutional, legal, valid and proper districts for all future elections, whether regular or special. The whole purpose in reapportioning legislative bodies is to meet the constitutional mandate set forth in the equal protection clause of the 14th Amendment

154

of the United States Constitution. Recognizing (1) that staggered terms for a legislative body is a proper and constitutional approach to the establishment of that body,[4] (2) that anytime reapportionment becomes law, boundaries of senatorial districts may be changed, and (3) that reapportionment is now mandated at least every ten years following the federal census, the reasonable and rational approach to a problem such as presented in this case is to give effect to the new districts as soon as the opportunity presents itself, whether that be in a regular or special election.

As was so aptly stated in *Reynolds, supra:* "In substance, we do not regard the Equal Protection Clause as requiring daily, monthly, annual or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic readjustment of legislative representation." 377 U.S. at 583. It is the overall apportionment scheme which is of the essence, not interim technical imperfections during a transition period.

In summary then, we hold as a matter of law that the Lieutenant Governor properly issued the Writ of Election under the facts of this case for the new Second Senatorial District.

LACHES

The preliminary objections filed by all of the defendants included the allegation that the plaintiffs were barred by laches. As we have already noted hereinbefore, both the plaintiffs and defendants have requested this Court to decide this matter on questions of law so that the decision of the Court en banc will be as on final hearing. On the question of laches, the defendants point to the facts of this case. Senator Donolow died November 27, 1972. The Lieutenant Gov-

---

[4] *See Carr v. Brazoria County, Texas,* 341 F. Supp. 155 (S.D. Tex. 1972) ; *Pate v. El Paso County, Texas,* 337 F. Supp. 95 (W.D. Tex. 1970) aff'd. 400 U.S. 806 (1970).

ernor issued the Writ of Election on January 3, 1973, in which March 13, 1973 was set as the date for the special election, 69 days after the issuance of the Writ. The Election Code, 25 P.S. §2779, permits political parties and bodies to file nomination certificates and papers not less than 50 days before the election. Three days thereafter are provided for the filing of objections to the certificates and papers (25 P.S. §2782). This Court is required to grant a hearing on objections within seven days after the last day for filing certificates and papers and is directed to determine the matter not later than 12 days after the last day for filing (25 P.S. §2782). The Secretary of the Commonwealth must certify the names of all the candidates not later than 30 days before the special election (25 P.S. §2786).

In this case, the plaintiffs filed their complaint on February 13, 1973, just 28 days before the date scheduled for the special election, or 41 days after the issuance of the Writ. Pa. R.C.P. No. 1509 permits laches to be raised by way of preliminary objections. The Supreme Court in the case of *Stahl v. First Pennsylvania Banking and Trust Company*, 411 Pa. 121, 191 A. 2d 386 (1963), and this Court in *Commonwealth v. Folcroft Landfill Corporation*, 1 Pa. Commonwealth Ct. 356 (1971), held that a complaint may be dismissed by the court on preliminary objections if laches clearly appears in the petition or complaint. The general principles upon which the doctrine of laches is based may be found in the case of *Wilson v. King of Prussia Enterprises, Inc.*, 422 Pa. 128, 133, 221 A. 2d 123, 126 (1966) where our Supreme Court said: "The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice. . . . The question of

laches is factual and to be determined by an examination of the circumstances. . . ."

In three of the reapportionment cases cited hereinbefore, namely *Reynolds v. Sims, supra, Butcher v. Bloom, supra* and *McLaughlin v. Osser, supra,* the courts clearly stated that when the State's election machinery is already in motion, equitable considerations permit a court to consider the factual circumstances, the mechanics and the complexities of the law. Those cases held that, if in the discretion of the court, justice and practical considerations deem it appropriate to proceed with the pending election, the court may permit an election to proceed even though it be technically unlawful or unconstitutional. We note further, as already stated in this opinion, that an election for State Senator has already been held at the November 1972 General Election under the reconstituted and reapportioned senatorial districts for the City and County of Philadelphia with no protest or contest being made by anyone. The plaintiffs in this case have waited too long to the prejudice of the electors in the new Second Senatorial District. If the plaintiffs are successful in this suit, the electors of the Second Senatorial District will be without any representation for a longer period of time than is reasonable. In view of our holding, that the new Second Senatorial District is the appropriate district for the Special Election proposed for March 13, 1973; it is not necessary for us to dismiss the complaint of the plaintiffs on the basis of laches. If, however, this were the only issue presented to this Court, we want to make it clear that the complaint would have been dismissed on that basis.

In conclusion, we hold, as a matter of law, that the new Second Senatorial District is the appropriate district within which to hold the Special Election set for March 13, 1973. Based upon the above discussion, we issued an order on February 27, 1973.