The Honorable Michael R. O'Neal State Representative, 104th District State Capitol, Room 170-W Topeka, Kansas 66612
Dear Representative O'Neal:
You request our opinion regarding the procedure to be followed in filling a vacancy that occurs in the office of State senator. Specifically, you ask whether the senatorial district boundaries established through reapportionment of the Legislature are to be followed when filling a vacancy that occurs in the office of State senator during the time following passage [1] of the reapportionment bill and prior to the next election of State senators.
It is assumed the Legislature will, during the 2002 legislative session, reapportion the senatorial and representative districts of the State. All 125 seats of the House of Representatives[2] are subject to election in 2002. The 40 seats in the Senate,[3] however, are not subject to election until 2004. There is the possibility that one or more vacancies in the office of senator may occur during the time following passage in 2002 of the bill providing for reapportionment of the senatorial districts and prior to the 2004 general election in which persons are elected to the office of State senator. We have been asked to consider the two following examples in reviewing the issue you present:
 (1) An existing senatorial district has seen a proportionately higher increase in population. The incumbent senator resides in the northern portion of the existing district. Due to the increase in population, the existing district is to be reapportioned into two senatorial districts. The incumbent senator will reside in one of the reapportioned senatorial districts. No incumbent senator resides in the territory comprising the other senatorial district carved out of this territory.
 (2) Due to a lower proportional growth in population, an area of the state will lose a senatorial district. Through reapportionment, an existing senatorial district is expanded such that it includes the residences of two incumbent senators. The reapportioned senatorial district is assigned a district number that is the same as that to which one of the incumbent senators was elected prior to reapportionment. No incumbent senator resides in the territory of a reapportioned senatorial district abutting the expanded district. The district number assigned to this latter reapportioned senatorial district is the same as the one to which the other incumbent senator was elected prior to reapportionment of the senatorial districts.[4]
The Legislature is required every tenth year to reapportion the State senatorial and representative districts.[5] "Bills reapportioning legislative districts shall be published in the Kansas register immediately upon final passage and shall be effective for the nextfollowing election of legislators and thereafter until again reapportioned."[6] In order to determine the manner in which a vacancy in a senate seat is to be filled, it must initially be determined when the reapportioned senatorial districts become effective.
When a question of interpretation of the Kansas Constitution arises, it is the function and duty of the court to define constitutional provisions.[7]
 "In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers (the legislature) and the adopters (the voters) of that provision. A constitutional provision is not to be narrowly or technically construed, but its language should be interpreted to mean what the words imply to persons of common understanding. Words in common usage are to be given their natural and ordinary meaning in arriving at a proper construction."[8]
Further, "[t]he definition should achieve a consistency so that it shall not be taken to mean one thing at one time and another thing at another time."[9]
 "[E]ffect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory."[10]
In other words, "one part [of a constitution] is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together. Every provision should be construed, where possible, to give effect to every other provision."[11]
In determining when the reapportioned senatorial districts become effective as stated in Section 1 of Article 10 of the Kansas Constitution, the court should be mindful of the constitutional qualifications necessary for seeking the office of and serving as a State senator. "During the time that any person is a candidate for nomination or election to the legislature and during the term of each legislator, such candidate or legislator shall be and remain a qualified elector whoresides in his or her district."[12]
Proper construction of the provision in Section 1 of Article 10 is determined by reviewing the effects of differing interpretations. The first scenario is that the reapportioned senatorial districts are effective upon election in 2002 of the members of the House of Representatives. Under this scenario, each incumbent senator represents the reapportioned senatorial district that corresponds numerically with the senatorial district represented by the senator prior to reapportionment, i.e., if the senator represented senatorial district no. 1 prior to reapportionment, the senator represents reapportioned senatorial district no. 1 upon the 2002 election of members of the House of Representatives.
The difficulty with applying this construction is apparent when considering, for example, reapportioned senatorial district no. 40. Senatorial district no. 40 currently consists of Cheyenne, Decatur, Gove, Graham, Greeley, Logan, Norton, Rawlins, Scott, Sheridan, Sherman, Thomas, Trego, Wallace, and Wichita Counties, all located in northwest Kansas.[13] According to information provided by the Revisor of Statute's Office, reapportioned senatorial district no. 40 is located in Johnson County on the State's border with Missouri. Therefore, the incumbent senator for senatorial district no. 40 would be representing a reapportioned senatorial district in which he or she does not reside.
Kansas law permits a person to have only one residence for voting purposes.[14] Establishing or changing a residence involves two elements: the act of being present at a locality; and the intent to return to that locality when absent.[15] Under the first scenario, the qualifications for senator as set forth in Article 2, Section 4 would have to be ignored, however temporarily, in order for an incumbent senator to become a qualified elector and resident of the reapportioned senatorial district. One section of the Constitution would be allowed to defeat another. Whether the incumbent senator actually complied with the continuing residence requirement[16] may remain subject to determination by the Senate.[17] If the continuing residence requirement is not ignored and the Senate determines that a nonresident incumbent senator fails to meet this requirement, a vacancy will occur in the reapportioned senatorial district in which the incumbent senator for that senatorial district does not reside.[18] The Legislature could through a reapportionment plan effectively remove from office a popularly elected senator. We believe such a result was not intended by the Legislature and the electors who approved the constitutional amendment of Section 1 of Article 10.
A second scenario is that reapportioned senatorial districts become effective as vacancies in office occur, all other reapportioned senatorial districts becoming effective with the senatorial election in 2004. In dicta in Attorney General Opinion No. 89-11, it appears that Attorney General Robert Stephan may have advocated this construction of the provision. Noting the similarity between the reapportionment provisions of the Constitution for the State of Pennsylvania and those included in the Kansas Constitution, Attorney General Stephan relied on a 1973 opinion of the Pennsylvania Supreme Court[19] and determined "that should a vacancy occur in the senate, it would be filled according to the new boundaries established by the reapportionment."[20]
While the provisions in the Kansas and Pennsylvania Constitutions are similar,[21] an important distinguishing factor does exist. All 40 Kansas senators are elected in the same general election to four year terms; senators in Pennsylvania serve staggered four-year terms with half the senatorial districts subject to election in each general election.[22] Reapportioned senatorial districts are effective in Pennsylvania following either the expiration of the appeal time or final approval by the Pennsylvania Supreme Court and are to "be used thereafter in elections to the General Assembly until the next reapportionment. . . ."[23] The Pennsylvania Supreme Court reviewed the constitutionality of the 1990 reapportionment plan for the state senatorial districts.[24]
At least two incumbent senators raised issues regarding constitutionality of the reapportionment plan based on the effect that neither one would be a resident of the reapportioned senatorial district correspondingly numbered with the senatorial district previously represented by the incumbent senator.[25] The Pennsylvania Supreme Court determined that because a reapportionment plan is, by the plain language of the Pennsylvania constitutional provision, effective after the final decision of the Supreme Court or the lapsing of the time for filing challenges, the reapportioned senatorial districts were effective upon the date of the order issued by the Pennsylvania Supreme Court.[26] The reapportioned senatorial districts in Pennsylvania, therefore, would always become effective at a time when only half the senatorial districts would be conducting elections. This situation does not occur in Kansas. Given the difference in the states' constitutional provisions that must be read in conjunction with the provision establishing the effective date of reapportioned senatorial districts, the weight to be given the Pennsylvania decision is minimal. The statement in dicta in Attorney General Opinion No. 89-11 is not applicable to the situation we are presently reviewing.
The second scenario, like the first, fails to consider the residence requirement for persons serving as senators. As long as an incumbent senator does not vacate the office, the incumbent senator would be allowed to serve a reapportioned senatorial district in which the incumbent senator is neither a qualified elector nor a resident. The provisions of Article 2, Section 4 would be ignored.
A further problem with this approach is highlighted when reviewing, for example, a potential vacancy in senatorial districts no. 11,[27] 23,[28] or 40.[29] Through the proposed reapportionment, the 11th and 23rd senatorial districts will lose territory to reapportioned senatorial district no. 40. The incumbent senators for senatorial district no. 11 and for senatorial district no. 23 will reside in territory comprising reapportioned senatorial district no. 11 and reapportioned senatorial district no. 23, respectively. However, while an incumbent senator resides in the 40th senatorial district, there is no incumbent senator residing in territory comprising reapportioned senatorial district no. 40. Under the second scenario, if the incumbent senator for any of these senatorial districts leaves office prior to the election of 2004, a person residing in the reapportioned senatorial district would be appointed to fill the vacancy and would be deemed to represent the reapportioned senatorial district. The problem that arises is that if the vacancy is in the 11th or 23rd senatorial district, the territory moved to reapportioned senatorial district no. 40 would not be represented in the State Senate; likewise, if the vacancy occurred in the 40th senatorial district, a person residing in reapportioned senatorial district no. 40 located in Johnson County would be appointed to fill the vacancy, leaving persons in Cheyenne, Decatur, Gove, Graham, Greeley, Logan, Norton, Rawlins, Scott, Sheridan, Sherman, Thomas, Trego, Wallace, and Wichita Counties unrepresented until the election in 2004.
The third scenario is that the reapportioned senatorial districts are not effective for any purpose until the election of senators in 2004. An incumbent senator would continue to serve the senatorial district from which the incumbent senator was elected or appointed prior to adoption of the reapportionment bill. Any vacancies occurring prior to the 2004 election would be deemed vacancies in the existing senatorial district, not the reapportioned senatorial district.
 "In construing a constitutional provision, [the court] consider[s] the circumstances attending its adoption and what appears to have been the common understanding of the voters."[30] The proper construction to be given a provision of the constitution requires consideration of the true intention of the people at the time the provision was adopted.[31]
 "In Farrelly v. Cole, 60 Kan. 356, 56 P. 492, 44 L.R.A. 464, it was held that the matter of apportionment is only a provision for future elections; and is not designed to affect the title to office or the tenure of the members making the apportionment; that a member of the legislature, unlike a county or township officer, has no official functions to perform within the district or territory from which he is elected; that members of the legislature are constitutional officers with fixed terms of office and are entitled to hold their respective offices for the constitutional period they were elected, and in the absence of a provision expressly provided when their term shall begin, it is competent for the legislature to fix the commencement of the term. This has been done by statute (G.S. 1949, 25-316) which provides that the regular term of office for members of the house and senate shall commence on the second Tuesday in January next succeeding their election.[32] Article 2, Section 8 declares that each house `shall be judge of the elections, returns and qualifications of its own members.' This is a grant of power, and constitutes each house the ultimate tribunal as to the qualifications of its own members. The power is exclusively vested in each house and cannot by its own consent, or by legislative action, be vested in another tribunal or officer, and the power continues during the entire term of office. It follows that when a member of the legislature is duly and regularly elected from a legislative district then created by law and his election and qualifications have been approved by the house to which he was elected and he takes the oath of office prescribed by law, he is entitled to exercise the legislative powers of his office during the term for which he was elected, at any regular or budget session or at a special session called by the governor."[33]
Reapportionment is based on the premise that the terms of the incumbent senators are not affected by the Legislature's action in adopting a reapportionment plan.[34] Therefore, the term of office of an incumbent senator is not shortened by reapportionment.
The most recent amendment to Section 1 of Article 10 was adopted by the electors of Kansas on November 8, 1988. The first clause of the amendment granted the Legislature discretionary authority during its regular session in 1989 to reapportion the State representative and senatorial districts. The Legislature was not required to reapportion the Senate simultaneously with the House of Representatives.[35] The first election of any legislators to be conducted after adoption of the amendment was the 1990 election of State representatives.[36] The first reapportionment plan actually required under the amendment was the 1992 plan that was effective for the election of legislators conducted in 1992, one in which all 40 seats of the Senate and 125 seats of the House were subject to election.[37] The makers and adopters of the constitutional amendment were aware of this time line and, for this reason, made the distinction between the obligations to be met during the 1989 and 1992 legislative sessions.
At the time the amendment was adopted, there was concern regarding the constitutionality of the member districts of the State Board of Education.[38] The member districts are comprised of four contiguous senatorial districts.[39] The population figures for the member districts as they existed at the time the amendment was adopted showed a deviation of 44.4%.[40] It was determined that unless the senatorial districts could be regrouped to significantly lessen the then-existing total deviation in population among the board member districts, the Senate would need to be reapportioned in 1989.[41] The first provision of the amendment accommodated this concern by granting the Legislature discretionary authority to reapportion the senatorial districts. The senatorial districts, as the building blocks for the member districts of the State Board of Education, would be reapportioned to meet the equal protection concerns associated with the disparity in population among the member districts of the State Board of Education and the reapportioned member districts of the State Board would be effective for such purpose. For senatorial purposes, however, the reapportioned senatorial districts would not be effective until "the next following election of legislators."
When the amendment to Section 1 of Article 10 was adopted by the Legislature and approved by the electorate, it was understood that: 1) reapportionment would not shorten the terms of office of senators, 2) senators were not subject to election at the next scheduled general election, and 3) the member districts for the State Board of Education potentially needed to be reapportioned to address constitutional concerns. Under these circumstances, it would appear the intention of the makers and the adopters of the 1988 amendment to Article 10 of the Kansas Constitution was that the reapportioned districts of either house of the Legislature would become effective at the time the full membership of that particular house was subject to election. The reapportioned senatorial districts set forth in the reapportionment plan adopted during the 2002 legislative session are not effective until the 2004 senatorial election.
Vacancies occurring in the Legislature are to be filled as provided by law.[42] "Whenever a vacancy occurs in the office of state representative or state senator such vacancy shall be filled by appointment by the governor of the person elected to be so appointed by a district convention held as provided in K.S.A. 25-3902."[43] For purposes of filling vacancies, the office of state senator is a "district office."[44]
 "(a) Except as provided in K.S.A. 25-312a and amendments thereto when a district convention is provided by law to be held to elect a person to be appointed to fill a vacancy in a district office, the county chairperson designated in subsection (b) or (c), within 21 days of receipt of notice that a vacancy has occurred or will occur, shall call and convene a convention of all committeemen and committeewomen of the party of the precincts in such district for the purpose of electing a person to be appointed by the governor to fill the vacancy. If such county chairperson is absent or for any reason is unable to call, or refuses to call such convention, then the county vice-chairperson shall call the convention and perform the other duties under this section required of such chairperson.
 "(b) If the district lies within a single county, the county chairperson of such county shall call the convention by mailing a notice, at least seven days before the date of the convention, to each precinct committeeman and committeewoman who is entitled to vote at the convention pursuant to subsection (e).
 "(c) If all or part of more than one county lies within the district, the county chairperson of the county in which the greatest number of qualified voters of the district reside shall call the convention by mailing a notice of the convention to each county chairperson of the party in each such county at least 10 days before the date of the convention. Such convention shall be held at a location within the district selected by the chairperson calling the convention. Such county chairperson, within three days after receipt of such notice, shall mail notice of the convention to the committeemen and committeewomen in their counties who are entitled to vote at the convention pursuant to subsection (e)."[45]
As previously determined, the reapportioned senatorial districts do not become effective until the election of State senators in 2004. Therefore, should a vacancy occur in a senate seat during the time following passage in 2002 of a reapportionment plan and prior to the election of State senators in 2004, the committeemen and committeewomen of the senatorial district as it existed prior to adoption of the reapportionment plan are to be convened to elect a person to fill the vacancy.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] For purposes of this opinion, passage of the reapportionment bill is viewed as including adoption of the reapportionment bill by the House of Representatives and Senate and approval of the bill by the Kansas Supreme Court. See Kan. Const., Art. 10, § 1.
[2] K.S.A. 4-101. See Kan. Const., Art. 2, § 2.
[3] Id.
[4] These examples were presented by the Revisor of Statute's Office and reflect the reapportionment plan that was being drafted by that Office at the time the opinion request was received. Any reference to a reapportionment plan adopted in 2002 and the reapportioned senatorial districts should be construed as referring to the reapportionment plan presented to us by the Revisor of Statute's Office.
[5] Kan. Const., Art. 10, § 1(a).
[6] Id. (emphasis added).
[7] Bd. of County Comm'rs of Leavenworth County v. McGraw FertilizerService, Inc., 261 Kan. 895, 916 (1997), citing State ex rel. Stephan v.Finney, 254 Kan. 632, Syl. ¶¶ 2, 4 (1994).
[8] In re Application of Kaul, 261 Kan. 755, 765-66 (1997) (internal citations omitted).
[9] Finney, supra note 7, 254 Kan. at 643, quoting State v. Nelson,210 Kan. 439, 445 (1972).
[10] Coleman v. Miller, 146 Kan. 390, 394 (1937), quoting 1 Cooley'sConstitutional Limitations 128 (8th Ed.). See also Finney,254 Kan. at 654.
[11] Coleman, 146 Kan. at 394.
[12] Kan. Const., Art. 2, § 4 (emphasis added).
[13] K.S.A. 2000 Supp. 4-4,243.
[14] Attorney General Opinion No. 94-51.
[15] Littell v. Millemon, 154 Kan. 670, 675 (1942).
[16] See Attorney General Opinion No. 94-51.
[17] Kan. Const., Art. 2, § 8.
[18] See Attorney General Opinions No. 94-94, 86-121.
[19] Marston v. Kline, 301 A.2d 393 (Pa. 1973).
[20] Attorney General Opinion No. 89-11, citing Marston v. Kline,301 A.2d 393 (Pa. 1973).
[21] The Pennsylvania Constitution of 1838 was the model for Article 10
of the Kansas Constitution that was adopted in 1859. Harris v. Shanahan,192 Kan. 183, 203 (1963). The Kansas provision, however, has undergone significant amendment beginning in 1974.
[22] Penn. Const., Art. II, § 2.
[23] Penn. Const., Art. II, § 17.
[24] In re 1991 Pennsylvania Legislative Reapportionment Com'n,609 A.2d 132 (Pa. 1992). See also Donatelli v. Mitchell, 2 F.3d 508
(3rd Cir. 1993).
[25] In re 1991 Pennsylvania Legislative Reapportionment Com'n,609 A.2d at 139-40. In one instance, the senatorial district was moved from the western part of the state to the eastern part, resulting in an incumbent senator residing hundreds of miles from the senatorial district represented by the senator. Id. at 140.
[26] Id. at 139.
[27] The Honorable John Vratil is the senator for the 11th District.
[28] The Honorable Karin Brownlee is the senator for the 23rd District.
[29] The Honorable Stan Clark is the senator for the 40th District.
[30] Most Worshipful Gr. Lodge of Ancient Free and Accepted Masonsof Kansas v. Bd. of County Comm'rs, 259 Kan. 510, 520 (1996).
[31] In re Diebolt's Estate, 187 Kan. 2, 13 (1960).
[32] See also Kan. Const., Art. 2, § 2 (terms of representatives and senators are to commence on the second Monday of January of the year following election).
[33] Harris v. Shanahan, 192 Kan. 183, 214 (1963) (internal citation omitted).
[34] See Attorney General Opinion No. 89-11.
[35] Id.
[36] The Legislature chose to reapportion only the state representative districts. See K.S.A. 4-3,401 to 4-3,529 (repealed); In re Stephan,245 Kan. 118 (1989).
[37] See K.S.A. 2000 Supp. 4-3,601 to 4-3,728; 4-4,201 to 4-4,243; Inre Petition of Stephan, 251 Kan. 597 (1992) (validity of 1992 House Bill No. 3083 which reapportioned the state legislative districts).
[38] See Attorney General Opinion No. 89-11.
[39] Kan. Const., Art. 6, § 3(a).
[40] Attorney General Opinion No. 89-11.
[41] Id.
[42] Kan. Const., Art. 2, § 9.
[43] K.S.A. 25-3903.
[44] K.S.A. 25-3901(a).
[45] K.S.A. 25-3902.